**In the Matter of the Petition of ALVA STEAMSHIP CO., Ltd., as owner of the M/T ALVA CAPE for exoneration from or limitation of liability.**

**No. 66 Ad. 622.**

United States District Court
S. D. New York.

Dec. 13, 1966.

Foley & Martin, New York City, for movant, Howland.

McHugh & Leonard, New York City, for movants, Devine and Clegg, Maurice F. Beshlian, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for petitioner, Alva Steamship Co., Ltd., James M. Estabrook, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Alva Steamship Co., Ltd. (Alva), a British corporation, was the owner of the m/t ALVA CAPE which was registered under the British flag. On May 17, 1966, the ALVA CAPE sailed from Karachi, Pakistan bound for Bayway, New Jersey with a cargo of naphtha. On June 16, 1966, in the Kill Van Kull off Bergen Point, New Jersey, she was in collision with the s/t TEXACO MASSACHU-SETTS. After the collision, a fire broke out on the Tug LATIN AMERICAN which had been assisting the TEXACO MASSACHUSETTS, which fire spread to the ALVA CAPE, to one of her assisting tugs, the ESSO VERMONT, and to the TEXACO MASSACHUSETTS. The ALVA CAPE was burned out, with substantial loss of life. There were no survivors from the Tug ESSO VERMONT, and there were injuries and loss of life on the TEXACO MASSACHUSETTS and on the Tug LATIN AMERICAN.

Following the collision, the ALVA CAPE fetched up on the edge of the channel off Bergen Point, where the fire was extinguished by the New York City Fire Department. Salvage contractors then took charge, and the vessel was towed to Gravesend Bay.

On June 21, 1966 Alva filed a petition pursuant to 46 U.S.C. §§ 183, 185 to limit its liability arising from the June 16th collision.

On June 27, 1966, after the initial petition for limitation of liability had been filed, the Fire Commissioner of the City of New York directed that the cargo compartments of the ALVA CAPE should be inerted through the introduction of carbon dioxide into the tanks. On June 28, during the introduction of the carbon dioxide, an explosion occurred, which caused further loss of life and damage to the ALVA CAPE. On July 3, after having been towed out to sea, the ALVA CAPE was sunk.

On July 8, Alva filed an amended petition for limitation of liability, in which petition it stated that the ALVA CAPE's voyage ended on July 3, 1966, whereas in its initial petition it had stated that the voyage ended on June 16, 1966.

Two motions are now brought by persons with claims for loss of life or bodily injury arising from the explosion on June 28, which claims have not yet been filed. In Motion #80, Robert M. Howland, as administrator of the estate of Lawrence B. Howland, deceased, moves for an order

dismissing the amended petition or, in the alternative, extending the time to file his claim and requiring Alva to post increased security. In Motion #81, Richard Devine and Pauline E. Clegg, individually and as administratrix of the estate of Alan B. Clegg, deceased, move by way of Order to Show Cause for an order severing the issues to be litigated as a result of "the two separate and distinct casualties set forth in the petition" (the collision on June 16 and the explosion on June 28) and requiring Alva to file additional and sufficient security for the benefit of persons killed or injured as a result of the explosion on June 28, 1966.

Movants contend that the collision on June 16 and the explosion on June 28 are two "distinct occasions" within the meaning of 46 U.S.C. § 183(d), which provides:

> "The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss of life or bodily injury had arisen."

Alva opposes the motions on the ground that the collision and the explosion constituted a single occasion.

At this stage of the proceedings, on the basis of the papers submitted on this motion, it is impossible to determine whether the explosion on June 28 was a distinct occasion from the collision on June 16. The words, "arising on distinct occasions" have been construed in the British courts in connection with Section 503(3) of the (British) Merchant Shipping Act of 1894, which contains almost identical language. The Lucullite, 33 L1. L.Rep. 187 (1929). See also, The Schwan, 7 Asp.M.L.C. 347, 350 (1892); The Creadon, 5 Asp.M.L.C. 585 (1886); The Rajah, 1 Asp.M.L.C. 403 (1872); Gilmore & Black, The Law of Admiralty, Sec. 10–38 at 722 (1957). In The Lucullite, which involved two collisions, the court found two distinct occasions, holding that there were distinct acts of negligence causing damage to two different ships, and that the sinking of the second ship was not an inevitable consequence of the collision with the first ship. It has been stated that "If successive collisions occur as a result of the same negligent act, all constitute one 'distinct occasion,' but if there is time and opportunity after the first collision to take action which would avoid the second collision, each is a 'distinct occasion.'" Maclachlan, Merchant Shipping, 95 n. 1. (7th ed. 1933), quoted in 3 Benedict, Admiralty, 401 n. 6 (6th ed. Knauth 1940).

While Alva contends that it turned over the ALVA CAPE to the salvage contractors immediately after the collision, so that it could not have been negligent in connection with the subsequent explosion (except to the extent that its negligence, if any, in connection with the collision was causally related to the explosion), movants assert that Alva was negligent in connection with the explosion, raising an issue of fact which can only be determined at a full evidentiary hearing.

Accordingly, those persons with claims for loss of life or bodily injury arising out of the explosion are entitled to a bond, in the full amount provided by statute, as security in the event it should later be determined that the explosion was a distinct occasion under Section 183(d). Cf. Black Diamond Steamship Corp. v. Robert Stewart & Sons, 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949). To date, filed claims for loss of life and bodily injury arising out of the collision exceed $30,000,000 and filed claims for loss of life and bodily injury arising out of the explosion exceed $2,000,000.

Alva has posted an *ad interim* stipulation in the amount of $162,400.30, based upon the damaged value of the ALVA CAPE plus the freights earned on the voyage (46 U.S.C. § 183(a)). Alva's attorney at the argument conceded that Alva should be required to post security pursuant to Section 183(b), (c) in an amount equal to $60 per ton (estimated at $624,076.20) to cover all claims for loss of life or bodily injury, whether arising from the collision on June 16 or from the explosion on June 28. How-

ever, in view of the foregoing, the motions are granted to the extent that Alva shall post a bond pursuant to Section 183(b), (c) on or before January 16, 1967 as security to cover claims for loss of life or bodily injury arising from the explosion on June 28.

Until the facts bearing on the issue of whether the June 16 collision and the June 28 explosion are distinct occasions are more fully developed, there would appear to be no useful purpose in severing the two sets of claims, and the motions in this regard are denied without prejudice.

The persons on whose behalf these motions have been brought will be granted until January 31, 1967 to file their claims arising from the explosion on June 28.

Settle orders on notice.