869 F.2d 843
 1989 A.M.C. 1422
 In the Matter of the Complaint of EXXON SHIPPING COMPANY, as
Owner of the Exxon Barge No. 334 for Exoneration
from and Limitation of Liability,
Plaintiff-Appellant,
v.
Peter Charles CAILLETEAU, et al., Defendants-Appellees.
 No. 87-3887.
 United States Court of Appeals,
Fifth Circuit.
 April 10, 1989.
 
 E. Burt Harris, Donald F. Glass, New Orleans, La., for plaintiff-appellant.
 Gauthier, Murphy, Sherman, McCabe & Chehardy, Edward F. Downing, III, T. Peter Breslin, Metairie, La., for Peter C. Cailleteau, Leslie A. Cailleteau, Evelyn C. Billiot, Sandra A.B. Waits, Ronald J. Billiot, Donald J. Billiot, Lynn P. Billiot, Ted G. Weems, Mary M. Weems, Marcus O. Ray and Tanya G. Ray.
 Paul A. Bonin, Trial Atty., New Orleans, La., for William E. Warren.
 Sean P. Early, New Orleans, La., for William E. Warren.
 McGlinchey, Stafford, Mintz, Cellini & Lang, Peter L. Hilbert, Jr., Trial Atty., Kathleen K. Charvet, Atty., New Orleans, La., for Gretna Machine & Iron Works, Inc.
 Bailey & Leininger, B. Ralph Bailey, Metairie, La., for Norris Thibodeaux.
 Becnel & Becnel, Barry J. Landry, Reserve, La., for Danny Page and Catherine Page.
 Robert W. Morgan, Plaquemine, La., for The Dow Chemical Co.
 Favret, Favret, Demarest & Russo, Clarence F. Favret, III, New Orleans, La., for Vapor Tech Inc., Roger C. Loubier and Robert C. Petterson.
 Stegeman & Marrero, Robert L. Marrero, Gretna, La., for Herman Cotton.
 Phelps, Dunbar, Marks, Claverie & Sims, Patrick E. O'Keefe, Trial Atty., Ira J. Rosenzweig, New Orleans, La., for Employers Natl. Ins. Co.
 Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Thomas W. Thorne, Jr., Douglas P. Matthews, New Orleans, La., for Employers Nat. Ins. Co.
 A. Gordon Grant, Montgomery, Barnett Brown, New Orleans, La., for defendants-appellees.
 Ramirez, Warner & Miskewicz, Clyde A. Ramirez, Ivan D. Warner, III, Patricia D. Miskewicz, New Orleans, La., for Joey Hepting and Angele T. Hepting.
 Sheldon Fernandez, Harvey, La., for Peter C. Cailleteau, Leslie A. Cailleteau, Evelyn C. Billiot, Sandra A.B. Waits, Ronald J. Billiot, Donald J. Billiot, Lynn P. Billiot, Ted G. Weems, Mary M. Weems, Marcus O. Ray and Tanya G. Ray.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, WILLIAMS and JONES, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Exxon Shipping Company (Exxon) appeals the district court's dismissal of its Petition for Exoneration From or Limitation of Liability from any and all damage resulting from the explosion of an Exxon barge. The court found the petition to be untimely under 46 U.S.C.App. Sec. 185 because of a prior notice of claim. We find the prior claim directed to a different occurrence, a subsequent collision between the wreckage of the Exxon barge and another barge. The prior claim then began the six-month statutory period for filing a limitation of liability petition as to the collision, but not as to the explosion. The explosion and collision are separate units for purposes of limitation. We thus reverse the district court's dismissal of Exxon's petition.
 
 I. Facts and Prior Proceedings
 
 2
 Exxon's Barge No. 334 ("Barge 334") exploded and sank on November 13, 1985, during a gas-freeing and cleaning operation on the Harvey Canal, Gretna, Louisiana. The explosion resulted in injuries and deaths. The appellees are the injured and the representatives of those who died. Immediately after the explosion, Exxon had the wreckage marked with a day marker and night beacon for the purpose of warning other mariners of its location in compliance with the Wreck Act. 33 U.S.C. Sec. 409.[1]
 
 
 3
 On November 15, 1985, two days after the explosion, a barge owned by Hollywood Marine, Inc. ("Hollywood") collided with the wreckage. On November 29, 1985, Exxon received notice from Hollywood claiming collision damage to its barge in the amount of $4,664.00.
 
 
 4
 Exxon was served notice on February 13, 1986, for a claim arising from the explosion of Barge 334. A personal injury suit was asserted on behalf of Nell Molane Hebert, widow of LeRay W. Hebert, in the amount of $750,000.00. Exxon responded by filing a Petition for Exoneration From or Limitation of Liability under 46 U.S.C.App. Sec. 185 on June 5, 1986.[2] The petition sought to limit Exxon's liability as to the death, personal injury, and property damage claims incurred in the explosion. The petition made no reference to the subsequent collision of the wreckage with the Hollywood barge.
 
 
 5
 On February 24, 1987, appellees filed a Motion for Summary Judgment seeking dismissal of the petition on the ground that it was not timely filed. The district court granted appellees' motion. The court found Hollywood's notice to Exxon of its collision claim sufficient to commence the running of the six-month period for claims arising from the explosion as well as for claims arising from the collision. When Exxon filed on June 5, 1986, it was more than six months after its first notice of a claim although it was within six months of the first notice of claim arising from the original explosion.
 
 
 6
 The court applied a "but for" theory of tort causation in ruling the explosion and the collision were "proximately related" and therefore part of the same occurrence for the purpose of filing a limitation petition. The court denied rehearing, and final judgment was entered on November 12, 1987. Exxon's appeal is timely.
 
 
 7
 We reverse the district court, finding the later collision and the earlier explosion two distinct and separate occurrences for purposes of filing limitation petitions. We find notice of the collision claim had no effect on the statutory limitation period for claims arising from the explosion.[3] Exxon's petition for limitation of liability as to the explosion is well within the six-month period and is not time barred.
 
 
 8
 II. The Triggering of the Statutory Period for filing the
 
 Petition for Limitation of Liability
 
 9
 The purpose of the six-month prescription on the limitation of liability petition is to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability.[4] In re Goulandris, 140 F.2d 780, 781 (2d Cir.), cert. denied, 322 U.S. 755, 64 S.Ct. 1268, 88 L.Ed. 1584 (1944). If a petition is not filed within the six-month period, it is dismissed as untimely. Morania Barge, 690 F.2d at 33. When a ship is not on a voyage, as was the situation of the Exxon barge, the measure or unit for limitation of liability is "the event, accident or disaster giving rise to the claim or group of claims." 3 Benedict, Admiralty Sec. 53, at 6-11. See also G. Gilmore & C. Black, The Law of Admiralty, Sec. 10-47, at 949 (2d Ed.1975). ("The [owner's] protection, time-wise, is limited to the group of claims which arise from the particular accident.").
 
 
 10
 There is no dispute that the Wreck Act is judged by negligence standards. In Nunley v. M/V Dauntless Colocotronis, 727 F.2d 455, 459-63 (5th Cir.), cert. denied, 469 U.S. 832, 105 S.Ct. 120, 82 L.Ed.2d 63 (1984), later proceeding, 661 F.Supp. 1096 (E.D.La.1987), aff'd in part and rev'd in part, 863 F.2d 1190 (5th Cir.1989), the court held under 33 U.S.C. Sec. 409 that a negligent non-owner may be liable to a vessel which struck a wreck that had been submerged over three years prior to the collision. Also, in Allied Chemical Corp. v. Hess Tankship Co., 661 F.2d 1044, 1060 (5th Cir.1981), the court recognized that if the evidence established that the submerged metal object was part of a sunken vessel wrecked eight months previously, then all negligent actors, including the owner of the ship, would be liable for the sunken ship. Negligence concepts are also applicable in determining if a shipowner can limit liability. The court has to determine what acts of negligence or conditions of unseaworthiness caused the accident and whether the shipowner had knowledge or privity of those acts. Agrico Chemical Co. v. SS Atlantic Forest, 459 F.Supp. 638, 648 (E.D.La.1978), aff'd, 620 F.2d 487 (5th Cir.1980).
 
 
 11
 Where the parties differ is in the application of negligence principles to the tolling of the six-month statutory period for limitation petitions. The district court, using a "but for" analysis, found a causal link between the collision and the explosion which was determinative. We disagree with the district court's reasoning and find that the collision and the explosion are separate and distinct occurrences having separate limitation periods. Because the Supreme Court has never authoritatively construed the controlling statutory provision that was added in 1936, nor have any of our sister circuits, we are left to determine the proper interpretation. Gilmore & Black, Sec. 10-15, at 854. We find as the proper rule to be applied the "distinct occasion" rule which has been developed in Great Britain and in the United States. It uses negligence principles, but only for part of the test because the limitation of liability available to shipowners does not cumulate a series of occurrences into one liability event.
 
 
 12
 A. The "Distinct Occasion" Rule as Developed in Great Britain
 
 
 13
 Limitation of liability law in the United States devolved from British law. Norwich Co. v. Wright, 80 U.S. (13 Wall.) 104, 116-18, 20 L.Ed. 585 (1872). The "distinct occasion" test has its origin in British limitation law and jurisprudence. See 3 Benedict, Admiralty Sec. 53, at 6-12; see also Greenman, "Limitation of Liability: A Critical Analysis of United States Law in an International Setting," 57 Tul.L.Rev. 1139, 1177 (1983). A body of British cases have interpreted the proper meaning of the language "distinct occasion" in the long standing limitation of liability law of Great Britain. Limitation Law of Great Britain, Merchant Shipping Act, 1894, 57 and 58, Vict., L. 60 Sec. 503(3). See The Lucullite, 33 Ll.1 L.Rep. 186, 189 (1929); The Schwan, 7 Asp.M.L.C. 347, 350 (1892); The Creadon, 5 Asp.M.L.C. 585 (1886); The Rajah, 1 Asp.M.L.C. 403 (1872); Gilmore & Black, Sec. 10-38, at 925.
 
 
 14
 In Lucullite, Lord Anderson described "distinct occasions" for limitation of liability purposes as follows:
 
 
 15
 (a) that there were distinct acts of negligence whereby the two ship were respectively injured; and
 
 
 16
 (b) that the later act or acts of negligence whereby the second vessel was injured were not necessitated or rendered inevitable by the earlier.
 
 
 17
 33 Ll.L.Rep. at 189. In Lucullite, there were two separate collisions involved. The court found the first collision due to improper mooring. The second collision occurred when the ship that was improperly moored was cast off to proceed into the harbor. The court noted that the reason the ship was in the harbor was because of its improper mooring; however, the court found the second collision not an inevitable occurrence from the first one. It could have been prevented by proper management after the first collision. The situation is analogous to our facts. The collision with the Hollywood barge would not have occurred if the explosion had not happened; however, the collision was not inevitable because subsequent events such as additional markings and warnings might have prevented it. Negligence principles then are used, but the test goes beyond a simple "but for" test.
 
 
 18
 B. American Development of the Meaning of "Distinct Occasion"
 
 
 19
 Since 1935, Sec. 183(d) of the Limitation of Liability Act novelly provides:
 
 
 20
 The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss of life or bodily injury had arisen.
 
 
 21
 46 U.S.C. Sec. 183(d). A shipowner must establish a separate limitation fund for each "distinct occasion" against which it seeks to limit liability for claims involving personal injury or death. While Sec. 183(d) does not literally apply to our facts--Barge 334 was not on a voyage--the rationale behind the section does apply.
 
 
 22
 Section 183(d) prevents a shipowner from limiting to a single fund all injuries occurring on a voyage. See 79 Cong.Rec. 14109, 14329-30 (1935). The section was added to prevent the inequities such as occurred in The Scotland, 105 U.S. 24, 26 L.Ed. 1001 (1882). In Scotland, the shipowner was able to limit his entire liability to the value of the vessel even though there was more than one accident involving injury on the voyage. The fund fell far short of compensating the victims of the more than one accident on the voyage. Gilmore & Black, Sec. 10-38, at 925. Under our facts, the same situation arises. The victims of an explosion and collision would have to compete for a limited amount of money as they did in Scotland if the "but for" reasoning of the district court is upheld. Under Sec. 185 then, we find the "unit of limitation" as having an analogous meaning to "distinct occasion" within Sec. 183(d). We next must look to the meaning of "distinct occasion" within Sec. 183(d).
 
 
 23
 In In re Alva Steamship Company, 262 F.Supp. 328 (S.D.N.Y.1966), the only American case that has considered the "distinct occasion" principle of Sec. 183(d), the court appropriately applied British law. See Gilmore & Black, Sec. 10-38, at 925; N. Healy & D. Sharpe, Admiralty Cases & Materials, 781 n. 27 (1974); 3 Benedict, Admiralty Sec. 53, at 6-12 n. 6; Greenman, 57 Tul.L.Rev. at 1177. The court in Alva looked to the meaning of "distinct occasion" to determine if damage that resulted from a collision was a distinct occasion from an explosion that occurred two weeks later at a dock during salvage and gas-freeing operations. While the court never reached the merits of this determination, it looked to the established British law for guidance:
 
 
 24
 If successive collisions occur as a result of the same negligent act, all constitute one "distinct occasion," but if there is time and opportunity after the first collision to take action which would avoid the second collision, each is a "distinct occasion." Maclachlan, Merchant Shipping, 95 n. 1 (7th Ed.1933), quoted in 3 Benedict, Admiralty, 401 n. 6 (6th Ed. Knauth 1940).
 
 
 25
 Id. at 330. Applying this test, Exxon had time and opportunity to mark the wreck after the explosion to avoid the Hollywood collision, making the two occurrences separate and distinct. Negligence principles are relevant. But simply because the owner of the ship is liable for both occurrences does not mandate that the occurrences be lumped together as one unit of limitation.
 
 
 26
 C. Practicalities of Sec. 185's Interpretation
 
 
 27
 Adopting the district court's "but for" test creates serious practical problems for apportioning the limitation fund. Under our facts, the events are close enough in time so that all relevant claims could possibly be dealt with in one proceeding. When the district court's test is taken a step further, however, the problems become apparent. For example, the district court's test would limit to a single fund an explosion followed by a collision with the wreck that occurs a year later. The only limit would be that the events be "proximately related." The shipowner would be placed in a situation of uncertainty that requires him to limit his liability under a petition based upon events that have not already taken place because, theoretically, the value of the fund for all injuries arising from the explosion would have to be shared with injuries from the later collision. The "distinct occasion" test on the other hand does not create this problem. Under this test, there will be a fund set up for each separate event. All claims arising from each event can be finally disposed of when they occur without the possibility of subsequent events affecting the recovery from the fund by individual claimants.
 
 
 28
 Our situation is analogous to the situation in which after a vessel's voyage ends with a wreck, a subsequent collision occurs with the wreck. The limitation fund as to the voyage applies only to claims arising during the voyage and not to claims arising subsequent thereto, such as a collision with the wreckage. The voyage clearly has an ending point, allowing for the delineation of a certain fund. See, The Snug Harbor, 53 F.2d 407, 412 (E.D.N.Y.1931), in which damages were found not to be part of the limitation unit relating to the voyage of the Snug Harbor when they were occasioned by a collision with the wreck of the Snug Harbor which had been submerged for thirty days after the voyage of the ship had ended with the wreck. See also Wong v. Utah Home Fire Insurance Co., 167 F.Supp. 230, 235 (D.C.Hawaii 1958). This analysis equally supports the use of the "distinct occasion" test where the first disaster as well as the second occurred when the ship was not on a voyage. Just as the voyage fund does not extend to subsequent events, under our facts the explosion fund must be found not to extend to subsequent separate events.
 
 III. Conclusion
 
 29
 We reverse the district court's dismissal of Exxon's Petition for Exoneration and/or Limitation of Liability. We find the explosion and the subsequent collision with the wreck to be "distinct occasions." Notice of a claim arising out of the collision did not begin the six-month statutory period in which to file a petition for limitation of liability for claims later filed which were based upon the explosion.
 
 
 30
 REVERSED AND REMANDED.
 
 
 
 [1]
 Section 409 reads in pertinent part:
 And whenever a vessel ... is wrecked and sunk in a navigable channel, accidentially or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, ...
 33 U.S.C. Sec. 409 (1982).
 
 
 [2]
 Section 185 of the U.S.C.App. states:
 The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of [this] chapter....
 46 U.S.C.App. Sec. 185 (1982).
 
 
 [3]
 On appeal, Exxon raises two other theories for reversal of the district court. Since we are reversing the court, we need not discuss their merits. We simply note the arguments
 First, Exxon argues that a claim against the owner of the wrecked vessel for improper marking under the Wreck Act is as a matter of law a claim which cannot be limited under the statute. Jung Hyun Sook v. Great Pacific Shipping Co., 632 F.2d 100, 102 (9th Cir.1980) (Notice which triggers the six-month statute of limitation must be notice of a claim subject to limitation.). Because Exxon had knowledge of the wreckage obviously--it did the marking--Exxon argues a petition at the time of the Hollywood claim would have been fruitless: the claim was not limitable. Exxon was either personally liable without limit because of negligent marking or free from fault in which case there would be no reason to try to limit recovery. See 46 U.S.C.App. Sec. 183(a); 33 U.S.C. Sec. 409. Under this analysis, the first claim "subject to limitation" was Hebert's claim. But see United States v. Nassau Marine Corp., 778 F.2d 1111, 1114 (5th Cir.1985) (the non-negligent shipowner may be entitled to limit her liability under 46 U.S.C. Secs. 181-89).
 Exxon also argues that it was under no duty to file a petition when it received notice of the Hollywood claim because the value of the claim was below the value of Barge 334 at the time of the collision. The undisputed evidence was that the Hollywood claim was for $4,664.00, while the value of the barge when struck was $7,500.00. It is an established principle that a petition for limitation of liability cannot be sustained where the amount claimed is concededly less than the value of the vessel. The Aquitania, 20 F.2d 457, 457-58 (2d Cir.1927). Where the vessel owner, however, receives notice of a claim for less than the value of the vessel, yet he is also aware that "other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value of his ship," he must then file his petition within six months of receiving notice of any claim, no matter how small, or otherwise be barred from asserting limitation of liability. In re Morania Barge No. 190, Inc., 690 F.2d 32, 34 (2d Cir.1982). Assuming that the explosion and the collision are part of the same occurrence as the district court did, Exxon's argument would fail because Exxon had notice of potential suits for wrongful death far exceeding the value of the barge at the time it received notice of the Hollywood claim.
 
 
 [4]
 The statute enables owners of vessels "to limit their liability to the value of their interest in the vessel and freight, plus, in some instances, a forfeitary sum, ..." 3 Benedict, Admiralty Sec. 1, at 1-2