**The WILLIAM J. RIDDLE.**

United States District Court
S. D. New York.
March 11, 1953.

Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, Edward L. Smith and Ruth Kearney, Attys. Dept. of Justice, New York City, of counsel, for petitioner.

Kirlin, Campbell & Keating, New York City, Robert S. Erskine, John F. Gerity,

New York City, of counsel, for claimant U. S. Lines Co. as owner of American Farmer.

Bigham, Englar, Jones & Houston, New York City, Charles A. Van Hagen, Jr., New York City, of counsel, for claimant Federal Ins. Co.

CLANCY, District Judge.

In this proceeding the United States as owner of the vessel William J. Riddle petitioned for limitation of its liability, if any, arising from the vessel's collision with another. It has been found liable for damages caused by this collision, D.C., 102 F. Supp. 884. The vessel was not surrendered nor was its value deposited. No stipulation or bond was filed because the vessel was the Government's. At the petitioner's instance the Court has agreed to rule on certain aspects of the limitation fund before questions of fact are submitted to the Commissioner.

The first question submitted to the Court is whether or not the charge for carrying the cargo of animals taken by the William J. Riddle to Danzig, Poland, must be contributed to the limitation fund here. The pending freight which a petitioner for liability must pay into the fund for disposition among claimants in a limitation proceeding is "the earnings of the voyage." The San Simeon, 2 Cir., 63 F.2d 798; The Main v. Williams, 152 U.S. 122, 14 S.Ct. 486, 38 L.Ed. 381. What constituted the William J. Riddle's voyage when she encountered her collision is a question of fact. She was fitted with stalls throughout her entire cargo space, under and on deck, except for the space occupied by the cattlemen and the necessaries of the voyage. Neither the petitioner nor its operating agents had any expectation whatever that there would be any such valuable cargo at any European port as would justify the expense of what was characterized as a "mighty high cost" of reconverting the vessel to carrying anything but animals. She carried back at a fixed fare thirty-five hostlers who had left Norfolk and whose round trip fare had been paid in advance. That half was to be repaid in respect to any of them who stayed does not change this fact or its importance. Knowing that bunker fuel could not be obtained in Europe at the time, she was bunkered for the round trip before leaving the United States, some indication that she was destined to return and not to accept any diversion. The accountant carried the round trip as a single voyage. The bill of lading provided for the round trip of the hostlers and so did the manifest. The rate for carrying the horses agreed with the rate fixed by the Shipping Conference. That Conference undoubtedly assumed the cost of a return trip in ballast in fixing the rate for that year. The operating agent here admittedly calculated the rate in this case on the assumption of a return trip empty. That the round trip constituted the voyage and the adventure on which the William J. Riddle was engaged at the time of her collision was thus fully established. The cases of The La Bourgogne, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973, and The Black Eagle, 2 Cir., 87 F.2d 891, are not authorities here. It was found in both those cases that the run of each of the vessels involved was a separate voyage because the east or west bound trip, as the case might be, had no connection whatever in purpose with the preceding trip in the other direction. The evidence in The Black Eagle, supra, practically made the issue a matter of contract. It follows that the pending freight in the sum of $221,665.53 must be paid into the limitation fund by the petitioner.

Next is proposed the question whether interest runs on the value of the Government's interest in the vessel and her pending freight. The Limitation Statute, 46 U.S.C.A. § 185, provides for the petitioner's surrender of the vessel to a trustee or the deposit in court of a sum equivalent to its value or security therefor. Rule 51 provides for the addition of accruing interest when the bond is given instead of the deposit of money. The import of the decision in Black Diamond S. S. Corp. v. Stewart & Sons, 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754, is that no bond can be required of the United States in a limitation proceeding, citing 28 U.S.C.A. § 2408 and 46 U.S.C.A. § 743. This necessarily means that the Government is not put to the choice of either of the alternatives. Therefore

it cannot be charged with detaining the ship or its money value. Since the Statute requires no more than the deposit of the money value, that value is the limit of the Government's liability, U. S. v. Commonwealth & Dominion Line, 278 U.S. 427, 49 S.Ct. 183, 73 L.Ed. 439; Boston Sand Co. v. U. S., 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170, and the Court has no jurisdiction to add to it—even Rule 51 cannot add to the jurisdiction or to the damage to which the Government consented. Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 44 S. Ct. 220, 68 L.Ed. 480. No interest therefore is to be allowed.