748 F.2d 622
 1985 A.M.C. 1995
 In the Matter of The Complaint of CARIBBEAN SEA TRANSPORT,
LTD., as Owner, and Alfa Line Ltd., as Charterer,
of M/S ANTILLE SUN, for Exoneration from
or Limitation of Liability.
CARIBBEAN SEA TRANSPORT, LTD. and Alfa Lines, Ltd.,
Petitioners-Appellants,
v.
Francisco RUSSO, et al., Claimants-Appellees.
 No. 83-5806.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 13, 1984.
Rehearing Denied Feb. 19, 1985.
 
 Michael T. Moore, Holland & Knight, William F. Hamilton, Miami, Fla., for petitioners-appellants.
 Arthur Roth, Miami, Fla., for claimant-appellee Francisco Russo.
 William C. Norwood, Miami, Fla., for claimant-appellee Naviera.
 Appeal from the United States District Court for the Southern District of Florida.
 Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK*, Senior Circuit Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 This admiralty appeal challenges the district court's order requiring the plaintiff/appellant shipowner to post security pursuant to sections 183(a) and 183(b) of the Limitation of Liability Act, 46 U.S.C. Sec. 183 et seq. We affirm in part, but remand for a more complete hearing as to whether security need be posted pursuant to section 183(b).
 
 
 2
 This admiralty case arises from a collision between the M/V ANTILLES SUN (ANTILLES), a steel cargo carrier, and the CORAIN II (CORAIN). After leaving Miami on February 11, 1982, and discharging cargo at several Caribbean ports, the ANTILLES was on its way back to Miami from Kingston, Jamaica when the collision occurred in waters off Cuba on February 24, 1982. The ANTILLES sank in deep waters where salvage was impossible. Appellee-claimant Francisco Russo, the second mate on the CORAIN, apparently suffered a back injury as a result of the collision.
 
 
 3
 On July 27, 1982, plaintiff-appellant Caribbean Sea Transport, Ltd, the owner of the ANTILLES, filed a petition for exoneration from or limitation of liability in the district court, pursuant to 46 U.S.C. Sec. 183 et seq. and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims (Admiralty Rules). Claims against the ANTILLES were then filed by cargo shippers, the owner of the CORAIN, and Russo.
 
 
 4
 On October 6, 1983, claimant Russo brought a motion pursuant to Admiralty Rule F(7) to require appellant to post security required by 46 U.S.C. Sec. 183 and Admiralty Rule F(1). Following a non-evidentiary hearing on November 4, 1983, the district court ordered that the appellant post security in the amount of $112,000 plus interest: $82,000 pursuant to section 183(a) and $30,000 pursuant to section 183(b). Appellants, who still have not posted the amount, appealed.
 
 DISCUSSION
 
 5
 A. Background on Limitation of Liability in Admiralty.
 
 
 6
 The Limitation of Liability Act (Limitation Act), 46 U.S.C. Sec. 183 et seq., is intended to limit the liability of shipowners following maritime accidents. The Limitation Act provides that the liability of the shipowner for any maritime injury or loss shall be limited (to all but personal injury claimants, who may be entitled to a greater, but still limited, amount) to the extent of the shipowner's investment in and earnings from the voyage, provided that the injury or loss involves no privity or knowledge on the owner's part. Admiralty Rule F sets up the procedural provisions for limitation of liability actions.
 
 
 7
 The meat of the Limitation Act is contained in section 183, subsections (a) and (b), which provide that:
 
 
 8
 (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
 
 
 9
 (b) In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) of this section is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $60 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $60 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.
 
 
 10
 The Limitation Act's protection is typically triggered when the shipowner files a complaint seeking limitation of liability pursuant to section 185 and Admiralty Rule F(1). Rule (F)(1) also provides that as a condition to filing the complaint, the shipowner
 
 
 11
 shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of his interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended;
 
 
 12
 or, in the alternative, shall transfer his interest in the vessel and pending freight to a trustee. Admiralty Rule F(1).[1] The posting of security must include six percent yearly interest. Id. If a claimant is at any time concerned that the amount of security posted is insufficient, Admiralty Rule F(7) provides that
 
 
 13
 [a]ny claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight. Thereupon the court shall cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction. In like manner any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury; and, after notice and hearing, the court may similarly order that the deposit or security be increased or reduced.
 
 
 14
 Once an action is filed and security posted, the court proceeds to determine if the owner should be exonerated from liability or if he is entitled to limitation of liability. An owner will be exonerated from liability when he, his vessel, and crew are found to be completely free from fault. Tittle v. Aldacosta, 544 F.2d 752, 755 (5th Cir.1977). To limit his liability to the amounts calculated under section 183, the shipowner must merely show that he had no privity to or knowledge of the negligence or unseaworthiness which caused injuries. Id. at 756. If the owner is not exonerated but prevails in his plea for limitation, the section 183 security fund is distributed on a pro rata basis to claimants and the owner's liability is at an end. Admiralty Rule F(8). Therefore, a determination of the amount of security that need be posted under section 183 constitutes a determination of the maximum amount of liability that the shipowner will be subject to under the Limitation Act.
 
 
 15
 B. Section 183(a) and Pending Freight.
 
 
 16
 As mentioned above, a condition to bringing a limitation action is that the shipowner deposit with the court as security a sum equal to the value of the vessel and pending freight, unless the owner transfers his interest in the vessel and freight to a trustee. The law is well established that the valuation of the vessel is its value at the termination of the voyage. Norwich Co. v. Wright, 13 Wall. (80 U.S.) 104, 20 L.Ed. 585 (1872). "Freight," as used in the Limitation Act, refers to the compensation received for carriage of goods, and not the goods themselves. "Pending freight" is the total earnings for the voyage, both prepaid and uncollected. The Main v. Williams, 152 U.S. 122, 131, 14 S.Ct. 486, 488, 38 L.Ed. 381 (1894); The William J. Riddle, 111 F.Supp. 657, 658 (S.D.N.Y.1953). If cargo is not delivered it is not earned and does not constitute "pending freight." Pacific Coast Co. v. Reynolds, 114 F. 877, 881-82 (9th Cir.), cert. denied, 187 U.S. 640, 23 S.Ct. 841, 47 L.Ed. 345 (1902).
 
 
 17
 In our present case it is undisputed that the vessel is lying at the bottom of the sea and has no value whatsoever. However, appellant raises a number of attacks on the court's $82,000 valuation of "freight pending on the voyage." Peeling away the appellant's various arguments, the bone of contention on this issue boils down to the factual question of what constitutes "the voyage" in this case. Appellant asserts that "the voyage" was merely the ship's return trip from Kingston to Miami. The appellee contends that "the voyage" encompasses the entire round trip of the ship from Miami back to Miami.
 
 
 18
 What constitutes a voyage is a question of fact, which depends on the circumstances of the situation. The William J. Riddle, 111 F.Supp. at 658. Where an accident occurs on the return half of a round-trip voyage, it may be that only the freight on the return voyage is "pending." For instance, in In re La Bourgogne, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973 (1908), a vessel made trips between France and New York without any intermediate stops, discharging freight and picking up new freight at each end of the journey. The vessel collided with another ship on one of its trips from New York to France. The court held that each of these trips between France and New York or vice-versa was a separate voyage, so that the owner did not need to surrender freight earned in the ship's prior sailing from France to New York. Id.
 
 
 19
 However, if a round-trip voyage is equivalent to a "single adventure," earned freight for the round trip must be surrendered even if the collision occurs on the return leg of the trip after delivery of all cargo to various points. For example, in The San Simeon, 63 F.2d 798 (2d Cir.), cert. denied, 290 U.S. 643, 54 S.Ct. 61, 78 L.Ed. 558 (1933), the ship was on a voyage from the Pacific Coast to New York and Philadelphia. She had delivered cargo in New York, thus necessarily earning freight on it, and she was sailing up the Delaware River with the remainder of her cargo when she collided. The Second Circuit determined that "the voyage" encompassed the entire trip from the West Coast to Philadelphia; and that "pending freight" thus included freight already earned on cargo that was delivered in New York. Likewise, in The William J. Riddle, 111 F.Supp. 657, the court held that the round trip constituted the voyage. There, a steamship carrying a cargo of animals to foreign ports delivered the animals to the ports and returned to the United States empty except for the animal handlers. The following evidence indicated that "the voyage" encompassed the round trip: there was no expectation of return cargo; the ship's accountant carried the round trip on his logs as a single voyage; and the bill of lading and manifest of the ship provided for the round trip of the animal handlers. Id. at 658. La Bourgogne was distinguished as a situation where each east or west-bound trip had no connection whatsoever in purpose with the preceding trip in the other direction. Id.
 
 
 20
 The facts of this case fall under the holdings of The William J. Riddle and The San Simeon. Evidence indicated that the ANTILLES was running a typical "liner" service in which it would pick up cargo in Miami, make a circle of deliveries, and come back to the originating port in Miami, normally with an empty cargo hold. The cargo manifests of the ANTILLES, kept in the ordinary course of business, classified as a single voyage the entire trip leaving from Miami on February 11th to deliver cargo in Aruba, Curacao, and Antigua. From this evidence in the record, the district judge properly determined that the entire trip constituted "the voyage."[2] Thus, all freight earned on the deliveries of cargo prior to the collision should be posted as security pursuant to section 183.
 
 
 21
 Once the round trip is determined to be "the voyage," the parties are not in dispute as to the calculation of the "pending freight." This is easily determined from the ship's cargo manifests, which recorded the amount of freight earned on the voyage by deliveries prior to the collision. Thus, we affirm the portion of the district court's order requiring the posting of $82,000 as security pursuant to section 183(a).[3] This amount plus 6% interest running from July 27, 1982 (the date this limitation proceeding was commenced), must be immediately posted to enable appellant to continue these limitation proceedings.
 
 
 22
 C. Section 183(b) and the Personal Injury Claim.
 
 
 23
 Section 183(b) was passed to protect claimants who have suffered bodily injury or loss of life, and provides that when the section 183(a) limitation fund "is insufficient to pay all losses in full," then the shipowner will be required to meet the claims for personal injuries up to an amount equal to $60 per ton of the vessel's tonnage. Appellant contends that the district court improperly granted the $30,000 of additional security under this subsection, arguing that additional security should be required only when the section 183(a) limitation fund is rendered insufficient to meet all the claims: that is, only once the limitation proceeding is concluded and the personal injury claims are liquidated; or in the alternative, only upon a clear showing that the section 183(a) fund will be insufficient to cover all the personal injury claims.
 
 
 24
 The law is not clear as to when, how, and under what conditions the court can order additional security posted under section 183(b). As Gilmore states;
 
 
 25
 [a]ssume that death and injury claims have been filed against a shipowner who petitions for limitation, alleging that the value of the ship (which has been lost) is zero. Could the court with which the limitation petition is filed require the owner, as a condition of limitation, to post bond in an amount sufficient (up to the statutory ceiling) to satisfy his maximum liability under the claims (which are still unliquidated); or should the court first determine the basic questions of liability and right to limitation before requiring the owner to provide funds or sureties to satisfy the judgments? The first alternative would be more satisfactory to claimants who would be protected against supervening insolvency of the shipowner or dissipation of assets during possible protracted judicial proceedings; the second alternative would be more to the shipowner's liking. The statute offers no sure guide to solution, although, on a purely verbal level of statutory construction, the statement that the $60 per ton fund comes into operation only "if the amount of the owner's liability as limited under subsection (a) is insufficient" might be read to suggest that the questions of liability and limitation under section 183(a) must be first settled before the additional fund is set up. However in two recent cases where the aggregate of the death and injury claims was many times in excess of the section 183(a) fund, the trial judges sensibly ordered that section 183(b) funds be set up at the outset of the proceedings.
 
 
 26
 G. Gilmore & C. Black, Jr., The Law of Admiralty, Sec. 10-34 (2d Ed.1975). Gilmore also notes that the provision in Admiralty Rule F(7), that "any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provision of the statutes relating to claims in respect of loss of life or bodily injury," should presumably be taken to increase the limitation court's discretion in granting such "demands." Id. at n. 138a.
 
 
 27
 The two recent cases cited by Gilmore are In Re Pan Oceanic Tankers Corp., 332 F.Supp. 313 (S.D.N.Y.1971), and In Re Alva Steamship Company, 262 F.Supp. 328 (S.D.N.Y.1966), which were both mass disaster cases where the district courts required the posting of additional security pursuant to section 183(b) when the dollar amount of personal injury and loss of life claims was much greater than the section 183(a) limitation fund.[4] These cases indicate that a district judge does have discretion to augment the security fund pursuant to section 183(b) prior to the conclusion of the limitation proceedings and the liquidation of personal injury claims.
 
 
 28
 However, section 183(b) does provide that the owner's liability to personal injury claimants will be increased only if the section 183(a) fund "is insufficient to pay all losses in full." Thus we think that personal injury claimants must make a clear, preliminary showing that the section 183(a) fund will be insufficient to cover all personal injury claims before a court should augment that fund under section 183(b). We hold that in order to augment the security fund pursuant to section 183(b), the district court must make preliminary determinations of the nature and extent of personal injury claims and the likelihood of recovery based on those claims, concluding that there is a likelihood that the section 183(a) fund will be insufficient to pay those claims in full. This will usually require some sort of evidentiary hearing. We emphasize that the product of such a hearing does not represent a final adjudication of liability and damages, but merely represents a preliminary appraisal of the shipowner's exposure to damages.
 
 
 29
 In our present case, the district court required the posting of section 183(b) security after a cursory hearing in which no evidence was taken. It does appear that evidence as to Russo's injury was available in the form of medical reports and Russo's deposition; but none of this evidence is present in the record of this case. At the hearing, Russo's counsel alleged that as a result of the collision Russo was knocked unconscious and hospitalized with a fractured vertebra; but there is no indication of the seriousness of this injury. Russo is the only claimant alleging personal injury in this case, so this is certainly not a mass disaster situation with huge potential liability. A remand would be unnecessary if Russo's counsel had presented any evidence regarding the nature and extent of injury; but under the circumstances of this case, we must vacate that portion of the district court's order requiring the posting of $30,000 security pursuant to section 183(b), and remand to the district court for a hearing and preliminary factual determination under the aforementioned standards.[5]
 
 
 30
 Therefore, the district court's opinion is AFFIRMED in part, and VACATED and REMANDED in part for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Admiralty Rule F(1), which essentially tracks the language of 46 U.S.C. Sec. 185, reads, in full:
 (1) Time for Filing Complaint; Security. Not later than six months after his receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute. The owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of his interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended; or (b) at his option shall transfer to a trustee to be appointed by the court, for the benefit of claimants, his interest in the vessel and pending freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended. The plaintiff shall also give security for costs and, if he elects to give security, for interest at the rate of 6 per cent per annum from the date of the security.
 
 
 [2]
 Appellant distorts the Le Bourgogne holding, arguing that the concept of "voyage" in admiralty practice is equivalent to each trip from one port to another. However, under our present facts each trip from one port to another was merely a leg of the voyage. As the district judge realized, appellant's interpretation would mean that a ship would never have "pending freight" in the situation of an open sea collision, because the ship could not have earned any freight between the time it left its last port and the time of the collision. The only time there would then be "pending freight" is when the ship arrives at a port, delivers its cargo, and right after delivery sinks before it can leave port
 
 
 [3]
 Appellant argues that an evidentiary hearing was required in order to conduct a "due appraisement" of the value of the vessel and pending freight. While we agree that an evidentiary hearing may often be helpful or even essential in making this valuation, we do not think it was necessary under the facts of this case. Here, it was undisputed that the owner's interest in the vessel was zero; the scope of the voyage was easily determined from the cargo manifests and the undisputed facts of the case; and the cargo manifests were clear proof of the value of pending freight on the voyage
 
 
 [4]
 In Pan Oceanic, the section 183(a) fund was $100.00, compared to unliquidated claims for loss of life or bodily injury totalling $28,500,000.00. Thus the court considered it appropriate to increase the fund pursuant to section 183(b). 332 F.Supp. at 314-15. In Alva Steamship, the shipowner was faced with approximately $30,000,000.00 in personal injury claims. Although he had already posted section 183(a) security, the court required the owner to post bond under section 183(b) equivalent to $60.00 per ton of his vessel. 262 F.Supp. at 330
 
 
 [5]
 At this hearing, the appellant shipowner may also present evidence as to the space occupied by seamen on the ANTILLES, which is excluded from the gross tonnage of the ship to reach the "tonnage" figure which is multiplied by $60 to obtain the amount of the section 183(b) fund. See 46 U.S.C. Sec. 183(b), (c). We think that the shipowner properly has the burden of proof on the calculation of "tonnage" under section 183(c)