**R. Cameron HAMMERSLEY, Plaintiff,**

v.

**The BRANIGAR ORGANIZATION, INC. d/b/a Landings Harbor and Delegal Creek Marina, Dr. E.D. Hood, and Betty Hood, individually and as owners of the VESSEL "BRUM=BRUM," Defendants.**

**No. CV 490–208.**

United States District Court, S.D.Georgia, Savannah Division.

April 10, 1991.

R. Jonathan Hart, Savannah, Ga., for R. Cameron Hammersley.

James M. Thomas, Savannah, Ga., for Branigar Organization, Inc.

Edward M. Hughes, Savannah, Ga., for Dr. E.D. Hood.

## ORDER

EDENFIELD, Chief Judge.

The plaintiff in this action, R. Cameron Hammersley, severely damaged his eye when he walked into an anchor stock that protruded from a boat over the dockway of a marina. Before the Court is the summary judgment motion of the defendants, Dr. E.D. Hood and his wife, Mrs. Betty Hood, on their affirmative defenses under the Limitation of Liability Act, 46 U.S.C. App. § 181 through 188 (1988) ("the Limitation Act" or "the Act"). In addition to arguing that they should be completely exonerated from liability, the Hoods argue that because they fall within the protective umbrella of the Limitation Act, they at least should not be held liable for more than the value of their vessel, the "Brum=Brum." Their codefendant, the Branigar Organization ("the marina"), and the plaintiff, Mr. Hammersley, disagree with the Hoods on this point, arguing that the Hoods' involvement in the acts leading to Mr. Hammersley's injury serves to remove the Hoods from the protection of the Act. For the reasons stated below, the Court DENIES the Hoods' motion as to exoneration, and GRANTS the motion as to limitation.

## BACKGROUND

Except as noted, these facts stated are undisputed, and viewed in the light most favorable to the nonmovants, the marina and Mr. Hammersley. The defendant, Bra-nigar, owns and operates two saltwater marinas known as Landings Harbor and Delegal Creek Marina. Mr. Hammersley and the Hoods each have a boat that they dock at the marina. One day in June 1989, the marina anticipated that several boats participating in a fishing tournament, in addition to its regular customers, would need to dock at the marina during the event. The marina requested that some of the regulars, including Hammersley and the Hoods, move their boats from their regular slips to some other part of the marina, so that the boats participating in the fishing tournament could all dock in one area. It is unclear what happened next.

Dennis Chandler actually moved the Brum=Brum, but the parties disagree about how Chandler came to move it, and the nature of his relationship with the Hoods. The Hoods' statement of facts does not mention how Chandler learned about the marina's request to move the Brum=Brum, or whether Chandler called the Hoods to discuss the move, or the nature of Chandler's relationship with the Hoods. The Hoods' brief, however, states: "there was no employment relationship between Chandler and [the Hoods], and Chandler is not the Hoods' employee ...."[1] Mr. Hammersley's version, however, is that

Dennis Chandler operates the vessel Brum=Brum with the permission of Dr. Hood and Mrs. Hood. Dennis Chandler helps in the overall maintenance and upkeep as well as the skippering of the vessel. Mr. Chandler is not paid anything but the Hoods' *[sic]* buy him something every now and then or pay for parts which he purchases.

Dennis Chandler called Dr. Hood and explained that Delegal Creek Marina had requested that the Brum=Brum be relocated to another slip to accommodate a fishing tournament at Delegal Creek Marina. Dennis Chandler called Dr. Hood for permission to relocate the Brum=Brum. Chandler discussed moving the vessel with Dr. Hood. Dr. Hood had no problem with the relocation of the

---

1. *Hood Brief* at 5.

vessel and gave permission for Chandler to comply with the request.[2]

The marina's version of the story sheds no further light on how the Brum=Brum came to be moved. It says, "the marina personnel requested both plaintiff Hammersley and [the Hoods] to move their respective vessels. An unidentified individual from the marina spoke with defendant Dr. Hood regarding the movement of his vessel, the Brum=Brum. The Brum=Brum was later moved by Dennis Chandler on June 6."[3] The Hoods contend that Chandler "was directed to a slip on the E dock by the marina's dockhands. Chandler did not choose where to berth the Brum=Brum."[4] Hammersley and the marina do not contest this fact, instead recounting this part of the story in vague, passive language.[5] The parties agree that the berth to which the Brum=Brum was moved at the time of the incident with Mr. Hammersley was too small for the Brum=Brum. Although the parties appear to dispute how the Hoods found out that the marina wanted the Brum=Brum moved, they appear to agree that the Hoods (or at least Dr. Hood) spoke to Chandler before the move, and allowed him to move it.

In any event, the parties agree that Mr. Hammersley walked into the anchor stock of the Brum=Brum. The parties disagree whether Hammersley was not looking where he was walking when the accident occurred, and they disagree whether the protruding anchor was "open and obvious." On these facts, the Hoods have moved for partial summary judgment, contending that the Limitation of Vessel Owner's Liability Act, 46 U.S.C. App. § 181 through 188 (1988) applies to them, and limits their liability to the value of the Brum=Brum. *See* 46 U.S.C. App. § 183(a) (1988). Alternatively, the Hoods claim that they should be exonerated from any liability for Mr. Hammersley's injuries. Although the Hoods' motion has engendered some confusion among the other parties concerning the precise relief it requests, the Court will treat the motion as requesting limitation of liability and, in the alternative, exoneration, as to both Dr. and Mrs. Hood.

## ANALYSIS

### A. Summary Judgment

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential or material. *E.g., Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323,

---

**2.** *Hammersley Brief* at 4.

**3.** *Marina Brief* at 2.

**4.** *Hood Statement of Material Facts* at 2.

**5.** *See Hammersley Brief* at 4; *Branigar Brief* at 2.

106 S.Ct. at 2553; *see Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir.1990). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out . . .—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

It is then the nonmovant's burden to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). "[F]actual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert,* 920 F.2d 878, 883 (11th Cir.1991) (citation omitted).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *E.g., Gilbert,* 920 F.2d at 882; *Hoffman v. Allied Corp.,* 912 F.2d 1379, 1383 (11th Cir.1990). The evidence need not be in a form that would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). "Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court, however, must avoid weighing conflicting evidence, *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *Brown v. Hughes,* 894 F.2d 1533, 1536 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990), or making credibility determinations. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 934 (11th Cir.1987).

*B. Limitation and Exoneration Generally*

■ The Limitation Act limits a shipowner's liability for an accident to the value of his vessel if the shipowner had no knowledge of or privity to the negligence or unseaworthiness that caused the accident. *See* 46 U.S.C. App. § 183(a) (1988). Although the courts have almost uniformly criticized application of the Act to pleasure craft, they have just as uniformly held that the language of the Act compels the conclusion that it does so apply. *E.g., Keys Jet Ski, Inc. v. Kays,* 893 F.2d 1225, 1229 (11th Cir.1990); *Hechinger v. Caskie,* 890 F.2d 202, 206 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *In re Young,* 872 F.2d 176, 177 (6th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990). A request for limitation of liability, though typically raised in a separate proceeding through the filing of a petition under 46 U.S.C. App. § 185, may also be raised as a defense in an answer to a suit for damages. *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1173 (5th Cir. Unit A Sept. 1981)[6], *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982); *see Vatican Shrimp Co. v. Solis,* 820 F.2d 674, 678 (5th Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); *Terracciano v. McAlinden Constr. Co.,* 485 F.2d 304, 307 (2d Cir.1973); *In re Hurlen Constr. Co.,* 551 F.Supp. 854, 856 (W.D.Wash.1982) (Beeks, J.). The two-step burden shifting scheme so familiar to section 185 petitions, however, does not apply where limitation is raised as a defense to an action. In a section 185 petition proceeding, the defending party must prove negligence or unseaworthiness. If this burden is met, then the burden shifts to the petitioner to prove lack of privity or knowledge. *See, e.g., Keys Jet Ski,* 893 F.2d at 1230. Where limitation is pleaded as a defense, however, "[t]o sustain its burden of proof *a defendant* must show how the loss occurred, together with its lack of privity to or knowledge of the asserted cause. If it cannot show how the loss occurred, a defendant must exhaust all the possibilities, and show that as to each it

---

**6.** Decisions that the former Fifth Circuit, including Unit A, handed down prior to October 1981 are binding on this Court under *Bonner v. City* *of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc). *See Wu v. Thomas,* 863 F.2d 1543, 1547 n. 7 (11th Cir.1989).

was without the requisite privity or knowledge." *Terracciano*, 485 F.2d at 307–08 (citation omitted, emphasis added).

"Privity or knowledge" has two meanings, depending upon whether the shipowner is a corporate or individual owner. *See In re Complaint of Patton–Tully Transp. Co.*, 797 F.2d 206, 211 (5th Cir. 1986) (Higginbotham, J.); *In re Complaint of Sheen*, 709 F.Supp. 1123, 1133–34 & n. 14, 1989 A.M.C. 1345, 1358–59 & n. 14 (S.D.Fla.1989); *In re Petition of Clinton*, 195 F.Supp. 165, 167 (D.Mass.1961). "[F]or individual owners privity of knowledge 'means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury.' " *Gibboney v. Wright*, 517 F.2d 1054, 1057–58 (5th Cir.1975) (quoting *Coryell v. Phipps*, 317 U.S. 406, 411, 63 S.Ct. 291, 293, 87 L.Ed. 363 (1943)); *see In re Complaint of Cirigliano*, 708 F.Supp. 101, 104 (D.N.J. 1989); *Sheen*, 709 F.Supp. at 1133, 1989 A.M.C. at 1358; *see also* 3 BENEDICT ON ADMIRALTY § 41, pp. 5–9 (7th ed.1989). "Knowledge or privity of any fact or act causing the accident is not enough for denial of limitation; *it is only knowledge or privity of negligent acts* or unseaworthy conditions which trigger a denial of limitation." *Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir.1976); *see In re Complaint of Hercules Carriers*, 768 F.2d 1558, 1574 (11th Cir.1985) (no limitation of liability "if it is shown that the shipowner had knowledge or privity of the *specific acts of negligence or conditions of unseaworthiness which caused the accident* ") (emphasis added); *In re Brasea, Inc.*, 583 F.2d 736, 738 (5th Cir.1978) *see also Holloway Concrete Prods. v. Beltz–Beatty, Inc.*, 293 F.2d 474, 479 (5th Cir.1961) (Tuttle, C.J.) ("under the limitation statute, if an agent or servant of the owner negligently injures another in the operation of a vessel[, then] [t]he owner of the vessel is entitled to have his liability limited to the value of the vessel if the boss 'was occasioned without the privity or knowledge of the owner.' ") Thus, "privity or knowledge must turn on the facts of the individual case." *Gibboney*, 517 F.2d at 1057; *see South Carolina State Highway Dep't v. Jacksonville Shipyards*, 1976 A.M.C. 456, 468 (S.D.Ga.1975) (Lawrence, C.J.).

 The defendant's burden to show lack of privity or knowledge

is not met by simply proving a lack of actual knowledge, for privity and knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge. Thus, knowledge is not only what the shipowner knows but what he is charged with discovering in order to apprise himself of conditions likely to produce or contribute to a loss.

*Hercules Carriers*, 768 F.2d at 1564 (citations omitted); *Gibboney*, 517 F.2d at 1058. A shipowner, even an individual one, has a duty to ensure that those whom he allows to operate his vessel are competent. *See Sheen*, 709 F.Supp. at 1134, 1989 A.M.C. at 1360. Failure to take reasonable steps in carrying out this duty may amount to negligence or an unseaworthy condition in the vessel. *See In re Guglielmo*, 897 F.2d 58, 61–62 (2d Cir.1990); *Hercules Carriers*, 768 F.2d at 1565–66. Of course, "[t]he allegation of a single, isolated incident gives rise to a cause of action based on negligence but not to one based on unseaworthiness." *Campbell v. Seacoast Prods.*, 581 F.2d 98, 99 (5th Cir.1978) (citation omitted).

The standard for exoneration is different from that for limitation. "An owner will be exonerated from liability when he, his vessel, and crew are found to be completely free of fault." *In re Complaint of Caribbean Sea Transport*, 748 F.2d 622, 626 (11th Cir.1984) (citing *In re Complaint of Tittle*, 544 F.2d 752, 755 (5th Cir.1977)), *modified on other grounds*, 753 F.2d 948 (11th Cir.1985). The burden of proof rests squarely on the one claiming exoneration. *E.g., Hercules Carriers*, 768 F.2d at 1582. If the Court finds that the Hoods are entitled to exoneration, that would make the limitation question moot. The Court, therefore, will examine exoneration first.

*C. Should the Hoods Be Exonerated?*

As pointed out by the other parties to this action, the Hoods' motion mentions the

relief it seeks several times, and not all the requests are consistent. The Court, however, will treat the motion as asking for exoneration of Mrs. Hood on the grounds that she had nothing to do personally with the mooring of the boat. The Court also will treat the motion as requesting relief for Dr. Hood on this ground, as well as the ground that he does not own the boat.

The parties have spent much time arguing about who owns the Brum=Brum. The Hoods say that Mrs. Hood is the sole owner of the vessel, and therefore Dr. Hood, under the facts of this case, should be exonerated. Hammersley and the marina see the situation differently. They argue that there are several facts that create a genuine issue whether Dr. Hood was a co-owner of the Brum=Brum, despite the fact that title to the vessel is in Mrs. Hood's name alone.

The word "owner" in the Limitation Act is accorded a liberal, common sense interpretation in order to effectuate the intent of the act. *See, e.g., Dick v. United States*, 671 F.2d 724, 727 (2d Cir.1982); *In re Petition of Colonial Trust Co.*, 124 F.Supp. 73, 76 (D.Conn.1954). It would make no sense to accord "owner" a different meaning with respect to exoneration, since the two defenses are usually raised together. In this case, the marina and Hammersley point to several facts that indicate that Dr. Hood and his wife were co-owners. For instance, in the docking and storage agreement between the marina and the Hoods, the Hoods filled in both of their names in the space marked "owners." [7] The marina also points out that Dr. Hood skippers the vessel about 75% of the time,[8] and that the Hoods pay for their slip at the marina with joint funds.[9] This evidence, viewed through the lens of common sense, suffices to create an issue of fact of whether Dr. Hood is an "owner" of the vessel. Dr. Hood, therefore, is not entitled

to summary judgment on the ground that he is not an owner of the vessel.

As mentioned, the Hoods also assert that they are both entitled to exoneration on another ground. It appears, though it is not clear, that the Hoods believe that they should be exonerated a matter of law because the accident was the result of Mr. Hammersley's inattention, not any fault of theirs or Chandler's.[10] Hammersley counters that this is a contested issue of fact, because Chandler's deposition testimony indicates that Dr. Hood and Chandler spoke about the marina's request that the Brum=Brum be moved, and agreed that Chandler would move it for the Hoods.[11] Hammersley thus believes that Dr. Hood's involvement precludes summary judgment on this ground. Chandler indisputably was the person who moved the vessel into the position that it occupied when the accident occurred. Thus, as the marina points out, there is a genuine issue of fact whether the alleged negligence of the defendants or that of the plaintiff caused the accident. That is because the Hoods have not discharged their obligation to show that "they, their vessel, *and* their crew" were completely free of fault. *See Caribbean Sea Transport*, 748 F.2d at 626 (emphasis added).

Dr. Hood argues that, because (1) Chandler was "admittedly a competent operator of the vessel" and (2) Dr. Hood had no prior notice of any other maritime shortcomings of Chandler, he should be exonerated since *he himself* was not negligent. Dr. Hood ultimately may prove these points, but he must exonerate not only himself, but the Brum=Brum *and* the crew (i.e., Chandler), as well. *See id.*

The Court holds that genuine issues of fact material to the determination whether the Hoods, the Brum=Brum, and Chandler were completely free of fault still exist. These issues preclude summary judgment on the exoneration issue.

---

7. *Hammersley Brief,* Exhibit 7.

8. *Dr. Hood Deposition* at 8.

9. *Id.* at 27–28.

10. *See Hood Brief* at 4, 5, 6–7.

11. *See Hammersley Brief* at 9; *Chandler Deposition* at 14.

### D. Limitation

At the outset, the parties present the Court with two threshold contentions. Both are readily answered. First, the Court rejects the marina's assertion that the Court must await the outcome of the negligence portion of the trial before it may determine knowledge or privity. The marina is correct that it is difficult (if not impossible) to apply the two-step section 185 petition analysis on summary judgment where limitation is raised as an affirmative defense to a damage action. But this is not a section 185 case, and the marina has erroneously assumed that the two-step burden shifting of section 185(b) applies here. As mentioned above, it does not. *See Terracciano*, 485 F.2d at 307–08. Instead, the defendants have the burden of showing how the loss occurred and that they did not have knowledge of or privity with that cause. *Id.* Application of the *Terracciano* standard is fully compatible with rule 56 in a damage action.

▉▉▉ The Court also rejects Mr. Hammersley's attempt to inject Georgia common law principles of agency into Limitation Act analysis. There is a strong need for uniformity in federal maritime law, and "[m]aritime law, through long experience, has been concerned with the limitation of liability." *Churchill v. F/V Fjord*, 857 F.2d 571, 576 (9th Cir.1988) (citation omitted), *superseded as amended*, 892 F.2d 763 (9th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990). The Court holds that Georgia principles of agency, to the extent they subject a vessel owner to liability greater than or different from the Limitation Act, are preempted by the Act. *See id.; see also Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216–18, 37 S.Ct. 524, 529–30, 61 L.Ed. 1086 (1917). Having dismantled these two threshold obstacles, the Court now turns to the merits of the limitation question.

▉▉▉ The first prong of *Terracciano* is to determine how the loss occurred. The parties appear to agree on this point: the anchor stock protruded over the dockway, and Hammersley walked into it. The cause of the injury, therefore, is either the position of the boat or Hammersley's inattention. Obviously, the Hoods had no knowledge of or privity with Mr. Hammersley's actions. Thus, the disagreement concerning limitation concerns the second part of the *Terracciano* inquiry, focusing solely on the docking of the Brum=Brum. The Hoods' primary argument is that Mrs. Hood should be able to limit her liability under 46 U.S.C. App. § 183(a) "because she was not in privity with, nor did she have knowledge of, any negligence which may have caused the plaintiff's injury." [12] She explains:

> The evidence shows that Dennis Chandler was undisputedly a competent operator of the vessel, so no theory of negligent entrustment can be alleged against Mrs. Hood. Furthermore, the evidence shows that Chandler made no effort to inform Mrs. Hood of any problems which may have occurred in docking the Brum=Brum in slip E–16 on June 6, 1989. As a result, Mrs. Hood should be entitled to limit her liability for her lack of privity and knowledge.[13]

Hammersley counters that there is a real dispute about Chandler's competence. He points to evidence that Chandler allowed the Brum=Brum to be docked in too small a slip,[14] that Chandler did not have a captain's license,[15] and that Chandler had never taken any boating safety courses.[16] Hammersley's arguments miss the point. Chandler's competence as a vessel operator is material only if, by his lack of competence, the vessel was rendered unseaworthy. Hammersley, however, makes no such claim. His complaint focuses exclusively on negligence. Moreover, the only evidence of an allegedly negligent act by Chandler in this case is the incident at

---

**12.** *Hood Brief* at 7.

**13.** *Hood Brief* at 7.

**14.** *See Hammersley Brief* at 11.

**15.** *Chandler Deposition* at 7.

**16.** *Id.* at 8.

issue. As mentioned earlier, an "allegation of a single, isolated incident gives rise to a cause of action based on negligence but not to one based on unseaworthiness." *Campbell*, 581 F.2d at 99; *see Guglielmo*, 897 F.2d at 61 (finding issue of material fact whether operator of boat was incompetent where he drank beer before going out on the boat, was not looking where he was going at the time of the accident, and had been stopped previously for speeding by a bay constable); *see also Sheen*, 709 F.Supp. at 1135 & n. 19, 1989 A.M.C. at 1362 & n. 19 (analyzing actions of individual owner's crew under negligence standard, not unseaworthiness).

Hammersley and the marina also make much of the fact that Chandler spoke to the Hoods before the move, asking them if it was acceptable to them that he move the vessel, as requested by the marina. The Hoods said, "Go ahead." Even if this is true, however, it is immaterial. The Hoods, as individual owners, are not held to the stricter standards that the Act requires of corporate owners. There is no evidence that the Hoods were present at the marina or on board the Brum=Brum when it was moved on the day in question, or that they participated in actually moving the vessel. *See Gibboney*, 517 F.2d at 1057–58. Nor is there evidence that the Hoods knew that Chandler had moved the vessel in the manner that he did. *See Hercules Carriers*, 768 F.2d at 1574; *Farrell Lines*, 530 F.2d at 10; *see also Guglielmo*, 897 F.2d at 61 ("Guglielmo was not present at the accident and therefore did not have knowledge or privity regarding negligent acts.") The Hoods knew Chandler was going to move the vessel; they did *not* know he was going to do so negligently. The Court holds that there is no genuine issue of material fact concerning whether the Hoods had knowledge of or privity to the specific act of negligence which is alleged to have caused the injury. They did not. Nor did they personally participate in the acts that caused the injury.

## CONCLUSION

The Hoods have not carried their burden to demonstrate that there is no genuine issue of material fact that they, their vessel, and their crew (Chandler) were *completely* free of fault. The Court therefore holds that they are not entitled to exoneration as a matter of law. Whether Hood is a co-owner of the vessel is also a disputed issue of material fact. The Court, therefore, cannot conclude on summary judgment that he should be exonerated on that ground. In contrast, it is undisputed that the Hoods had no actual knowledge of or privity with the specific act of negligence that allegedly caused Hammersley's injury. Nor did the Hoods personally participate in that act. The Court concludes, therefore, that they may limit their liability under the Act to the value of the vessel. Accordingly, the Court DENIES the Hoods' motion for summary judgment on the issue of exoneration, and GRANTS their motion on the issue of limitation.

SO ORDERED.