In the Matter of the Complaint of KEYS JET SKI, INC., Sunset Watersports, Inc., and Richard C. Welter, or one or more of them, for exoneration from or limitation of liability as owners of Kawasaki 650 Jet Ski KAW18324F787, Plaintiffs–Appellants,

v.

Roger KAYS, Bonnie Kays, Claimants–Appellees.

Nos. 89–5080, 89–5187.

United States Court of Appeals, Eleventh Circuit.

Feb. 6, 1990.

Carl R. Nelson, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for plaintiffs-appellants.

John T. Biezup, Frank P. DeGiulio, Palmer Biezup & Henderson, for plaintiffs-appellants.

Richard A. Kupfer, West Palm Beach, Fla., claimants-appellees.

Before HATCHETT and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

These appeals require that we determine whether a "jet ski" is covered by the Limitation of Liability Act, 46 U.S.C.App. §§ 181–188 (the "Limitation Act"). The district court ruled that a jet ski is a pleasure craft and that pleasure craft are not properly covered by the Limitation Act. Although we agree that a jet ski is a pleasure craft, we hold that pleasure craft are covered by the Limitation of Liability Act.

## I. FACTS

On February 28, 1988, Roger and Bonnie Kays ("the Kays") rented a jet ski from Keys Jet Ski, Inc. for thirty minutes. This jet ski, a Kawasaki 650, is seven feet in length, has a sixty-five horsepower engine, and is capable of reaching speeds in excess of thirty miles per hour.[1] Keys Jet Ski, Inc., Sunset Water Sports, and Richard C. Welter ("the appellants") share ownership of the jet ski. According to the Kays, an employee of Keys Jet Ski gave the Kays instructions on operating the jet ski, but did not give instructions on safety rules or precautions. While the Kays' 13-year-old son, Kevin, operated the jet ski in crowded waters off Smathers Beach in Key West,

Florida, it collided with the VITAMIN C, a 25-foot open fisherman with a 200 horsepower outboard engine. Kevin Kays suffered injuries in this accident that resulted in his death on March 4, 1988.

## II. PROCEDURAL HISTORY

On August 24, 1988, the appellants filed a complaint seeking exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181–188. Upon filing the complaint, the appellants deposited $3,319 in the registry of the district court, representing the value of the jet ski and establishing the limitation fund.

On August 30, 1988, the district court entered an order for appraisal and monition and a separate order for an injunction. The order of monition required anyone with claims against the appellants to file such claims in the limitation proceedings on or before November 1, 1988. The injunction also enjoined anyone who had claims as a result of the incident from proceeding in any other forum against the appellants. Consequently, on October 25, 1988, the Kays filed a claim and an answer in the limitation proceeding based on the wrongful death of their son.

The Kays moved to dismiss the appellants' limitation claim, contending that the Limitation Act should not be applied to accidents involving pleasure craft. On January 6, 1989, the district court granted the motion to dismiss on the basis that the Limitation Act does not apply to pleasure craft in general or jet skis in particular. *In re Keys Jet Ski, Inc.*, 704 F.Supp. 1057 (S.D.Fla.1989). On January 17, 1989, the appellants first appealed from the order granting the motion to dismiss.

The Kays also filed a motion seeking dissolution of the injunction which the district court granted on February 8, 1989. The appellants appealed from that order on February 2, 1989. The two appeals are consolidated.

---

1. We use the terminology "jet ski" to include the generic class of jet-propelled, open-sided vessels, while recognizing that in some instances "Jet Ski" may signify a distinct brand or model.

## III. CONTENTIONS OF THE PARTIES

The appellants contend that the district court erred in characterizing the jet ski as a pleasure craft for the purpose of applying the Limitation Act and in finding that the Limitation Act does not apply to pleasure craft. The appellants also contend that the district court erred in lifting the injunction entered pursuant to Supplemental Rule F. Fed.R.Civ.P.Supp. F(3).

The Kays contend that the district court properly found the jet ski to be a pleasure craft, and that this finding is one of fact subject to the clearly erroneous standard. The Kays also contend that the district court properly held that pleasure craft are not covered by the Limitation Act. In addition, the Kays argue that the district court's order should be affirmed because the jet ski owners had "privity or knowledge" of the negligence that caused Kevin's death, thereby excluding them from the Limitation Act's protection.

## IV. ISSUES

The issues presented are: (1) whether pleasure craft are covered by the Limitation Act; (2) whether a jet ski is a "vessel" within the meaning of the Limitation Act; (3) whether the district court's order should be affirmed on the alternative ground that the cause of action alleged against the appellants inherently requires their privity or knowledge; and (4) whether the district court erred in lifting the injunction.

**2.** Title 46 U.S.C.A.App. §§ 181–188 (1958) (originally enacted as Act of Mar. 3, 1851, ch. 43, § 3, 9 Stat. 635).
 Section 183(a) of the Limitation Act provides in relevant part: "The liability of the owner of *any vessel* ... for any ... loss ... without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." (Emphasis added).

**3.** The value of the vessel and its freight is determined after damage or loss occurs. *Norwich Co. v. Wright*, 80 U.S. (13 Wall) 104, 122, 20 L.Ed. 585 (1871). If the vessel is unsalvageable, the vessel's owner could have $0 liability. To avoid this harsh result, Congress amended the statute in 1935.

## V. DISCUSSION

The Kays contend that whether the jet ski is covered under the Limitation Act is a mixed question of law and fact. We disagree. The proper interpretation of a statute as required by the issues here, is purely a question of law. *Burns v. United States ex rel. Internal Revenue Service*, 887 F.2d 1541 (11th Cir.1989). Because the district court's dismissal is based on conclusions of law, our review is plenary. *McDonald v. Hillsborough County School Board*, 821 F.2d 1563, 1564 (11th Cir.1987). Even if the issue is correctly characterized as a mixed question of law and fact, the "[c]learly erroneous standard does not apply to findings made under an erroneous view of controlling legal principles." *Harris v. Birmingham Board of Education*, 712 F.2d 1377, 1381 (11th Cir.1983).

### A. Purpose of the Limitation Act

Congress enacted the Limitation of Liability Act in 1851 to promote investment in the domestic commercial shipping industry.[2] The Limitation Act restricts the financial liability of a ship owner to the value of the vessel and its freight when the vessel is involved in an accident caused without the ship owner's "privity or knowledge."[3] In its first case interpreting the Limitation Act, the Supreme Court explained its purpose as follows:

> The great object of the law was to encourage ship-building and to induce capitalists to invest money in this branch of industry. Unless they can be induced to do so, the shipping interests of the coun-

Title 46 U.S.C.App. § 183(b) (1958) provides in relevant part:
In the case of any seagoing vessel, if the amount of the owner's liability is limited under subsection (a) of this section is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $60 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $60 per ton....
"*Seagoing* vessel" is defined in section 183(f) as excluding "pleasure yachts, ... fishing vessels ... [and] nondescript self-propelled vessels...."
In 1984, the dollar amount per ton was raised to $420. October 19, 1984, Pub.L. 98–498, Title 2, § 213(a), 98 Stat. 2306.

try must flag and decline. Those who are willing to manage and work ships are generally unable to build and fit them. They have plenty of hardiness and personal daring and enterprise, but they have little capital. On the other hand, those who have capital, and invest it in ships, incur a very large risk in exposing their property to the hazards of the seas, and to the management of seafaring men, without making them liable for additional losses and damage to an indefinite amount.

*Norwich Co. v. Wright,* 80 U.S. (13 Wall) 104, 121, 20 L.Ed. 585 (1871).

### B. Application to Pleasure Craft

■ In its original form the Limitation Act expressly stated that it did not apply to "any canal boat, barge, or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation."[4] Act of Mar. 3, 1851, ch. 43, § 7, 9 Stat. 635. In 1886, Congress amended the Act to extend its application to "all sea-going vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal-boats, barges, and lighters." 24 Stat. 80 (codified at 46 U.S.C.App. § 188). Following the Act's amendment in 1886, one district court stated that "the evident purpose of the amendment was to make the statute applicable to all vessels, irrespective of the purpose to which they are put." *In re Liebler,* 19 F.Supp. 829, 832 (W.D.N.Y.1937) (the "FRANCESCA"). *See Warnken v. Moody,* 22 F.2d 960, 962 (5th Cir.1927) (limitation of liability allowed to owner of thirty-foot pleasure craft). Congress's failure to limit the applicability of the Act when additional amendments were made in 1935, 1936, and 1984, supports the proposition that Congress intended the Act to apply to "any vessel."[5]

Despite the logical appeal of applying the Limitation Act only to commercial vessels, the language of the statute and Congress's failure to so amend the Act eliminates the necessity for us to determine whether the jet ski is a commercial vessel. Neither the statute nor the cases support the automatic application of the Limitation Act only to vessels denominated as "commercial." *See Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 676, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982) ("Congress defines the term 'vessel,' for the purpose of determining the scope of various shipping and maritime transportation laws, to include all types of waterborne vessels, without regard to whether they engage in commercial activity.").

Recent cases have criticized the Limitation Act as "hopelessly anachronistic." See e.g. *University of Texas Medical Branch at Galveston v. United States,* 557 F.2d 438, 441 (5th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). The application of the Limitation Act to pleasure craft has also been criticized as illogical. *Lewis Charters, Inc. v. Huckins Yacht Corp.,* 871 F.2d 1046, 1054 (11th Cir.1989) ("owners of pleasure vessels may limit their liability under the Limitation Act [although] . . . there is little reason for such a rule."). In *Gibboney v. Wright,* 517 F.2d 1054, 1057 (5th Cir.1975), the Fifth Circuit acknowledged that application of the Limitation Act to pleasure craft could produce "drastic" results, but recognized that case law and legislative intent required application of the Limitation Act to pleasure craft.[6] "[T]he weekend sailor is as privileged to limit liability for damages committed by his yacht as are hard pressed commercial owners for those by their multi-tonnaged merchantmen plying their trade across the crowded shipping lanes. . . ." *Gibboney,* 517 F.2d at 1057.

In this case, the district court relied on language in a Fifth Circuit case two years after *Gibboney* to find that the application of the Limitation Act to pleasure craft is

---

**4.** Webster's Third New International Dictionary (1976) defines a "lighter" as "a large usually flat-bottomed boat or barge that is mainly used in unloading or loading ships. . . ."

**5.** *See* Act of Aug. 29, 1935, ch. 804, § 1, 49 Stat. 960; Act of June 5, 1936, ch. 521, § 1, 49 Stat.

1479; Act of Oct. 19, 1984, Pub.L. 98–498, § 213(a), 98 Stat. 2306.

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

unsettled in this circuit. *Tittle v. Aldacosta*, 544 F.2d 752, 756 (5th Cir.1977). The district court characterized the statement in *Tittle* that "pleasure vessels and sporting charter vessels may well qualify as 'seagoing vessel[s]'" as a retreat from *Gibboney*'s application of the Limitation Act to pleasure craft. This dicta merely suggests, however, that some pleasure craft may be subject to the "seagoing vessel" provisions of section 183(f).

The district court found that earlier decisions of the Supreme Court and of this circuit "merely assumed" that the Limitation Act applied to pleasure craft. In *Coryell v. Phipps*, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943), the Court allowed limitation of liability to the owner of a pleasure craft found to be without "privity or knowledge" of the negligence which caused the injuries. The Court did not discuss the application of the Limitation Act to pleasure craft. This circuit recently held the Limitation Act applicable to a thirty-three foot cruiser without commenting on applying the statute to pleasure craft. *Whitaker v. Beavin*, 808 F.2d 762 (11th Cir. 1987) (issue concerned "privity or knowledge").

The modern trend, while critical of the Act, nevertheless follows the application of the Limitation Act to pleasure craft. All reported circuit court decisions apply the Limitation Act to pleasure craft. *See Hechinger v. Caskie*, 890 F.2d 202 (9th Cir. 1989); *Endsley v. Young*, 872 F.2d 176 (6th Cir.1989); *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745 (4th Cir.1975); *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974); *The ONEIDA*, 282 F. 238 (2d Cir.1922). In addition, the vast majority of district court cases have also applied the Limitation Act to pleasure craft. *See, e.g., In re Boca Grande Club, Inc.*, 715 F.Supp. 341 (M.D. Fla.1989); *In re Guglielmo*, 704 F.Supp. 352 (E.D.N.Y.1989) (twenty-one foot motor boat); *In re Brown*, 536 F.Supp. 750 (N.D. Ohio 1982); *Armour v. Gradler*, 448 F.Supp. 741 (W.D.Pa.1978); *In re Klarman*, 295 F.Supp. 1021 (D.Conn.1968); *In re Colonial Trust Co.*, 124 F.Supp. 73 (D.Conn.1954); *In re Liebler*, 19 F.Supp. 829 (W.D.N.Y.1937).[7]

While we might agree in this case with the district court that extension of the Limitation Act to pleasure craft such as jet skis is inconsistent with the historical purposes of the Act, restriction of its applicability requires congressional action. Despite repeated calls for amendment of the Limitation Act, Congress has failed to remove pleasure craft from the statute's protection.[8] As the Sixth Circuit has noted regarding application of the Limitation Act to pleasure craft, "[i]f, indeed, anything is broken, it is up to Congress to fix it." *Endsley v. Young*, 872 F.2d at 178. Accordingly, we hold that the district court erred in finding that the Limitation Act is not applicable to pleasure craft.

### C. Whether the Jet Ski is a "Vessel"

At oral argument, we spent much time discussing whether a jet ski is a "vessel" within the meaning of the Limitation Act. From a review of the record, we

---

7. The district court cited several recent district court cases to support its holding that the Limitation Act "does not apply to pleasure craft and, more specifically, that the Act does not apply to jet skis." *Estate of Lewis*, 683 F.Supp. 217 (N.D. Cal.1987); *In re Shaw*, 668 F.Supp. 524 (S.D.W. Va.1987); *In re Sisson*, 668 F.Supp. 1196 (N.D. Ill.1987); *In re Lowing*, 635 F.Supp. 520 (W.D. Mich.1986); *In re Tracey*, 608 F.Supp. 263 (D.Mass.1985); *Baldassano v. Larsen*, 580 F.Supp. 415 (D.Minn.1984). We note, however, that *In re Lowing* and *In re Tracey* were abrogated by *Endsley v. Young*, 872 F.2d 176 (6th Cir. 1989).

8. *See* Gilmore & Black, *The Law of Admiralty*, § 10–23, at 700 (1957) ("the Limitation Act, originally passed to afford a measure of relief to a hard-pressed and highly competitive industry, has become a charter of irresponsibility for a few wealthy individuals."); Harolds, *Limitation of Liability and its Application to Pleasure Boats*, 37 Temp.L.Q. 423 (1964) (insurance companies are true beneficiaries under Limitation Act); *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745, 748 (4th Cir.1975) ("Congress ... could tailor the jurisdiction to the need, relinquishing to the states and to their judicial systems those controversies better handled there while retaining for federal admiralty jurisdiction those controversies for which it is better equipped.").

conclude that this issue was not in dispute. Nevertheless, because it is a threshold issue in these cases, we address the question of whether a jet ski is a "vessel."

The term "vessel" is defined in 1 U.S.C. § 3 as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3 (West 1985). The Kays contend that a literal interpretation of this definition could include a styrofoam surfboard, a life preserver, or even a conventional water ski.

Application of the Limitation Act to jet skis does not lead to such an absurd result. In the proper case, a valid distinction could be drawn between these flotation devices and the Code's definition of a "vessel." In this case, however, we find no reasonable distinction between small motor boats capable of being used as a means of transportation on water and the jet ski, which is also capable of substantially equivalent transportation on water. *Cf. Feige v. Hurley,* 89 F.2d 575 (6th Cir.1937) (fifteen-foot Chris–Craft motorboat); *In re Boca Grande Club, Inc.,* 715 F.Supp. 341 (M.D. Fla.1989) (sixteen-foot catamaran). Absent congressional determination that similar small pleasure craft are not entitled to protection under the Limitation Act, we hold that a jet ski is a "vessel" covered by the Limitation Act.

### D. "Privity or Knowledge"

The Kays argue that this court should affirm the dismissal of the claim for limitation of liability because the appellants had "privity or knowledge" of the negligence that resulted in the injury. This alternative theory for affirming the district court is meritless.

■ The determination of whether the owner of a vessel is entitled to limitation of liability requires a two-step analysis. "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the ship owner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Farrell Lines, Inc. v.*

*Jones,* 530 F.2d 7, 10 (5th Cir.1976). Once the opposing party has proved negligence or unseaworthiness, the burden of proof shifts to the owner of the vessel to prove lack of privity or knowledge. *Whitaker v. Beavin,* 808 F.2d 762, 764 (11th Cir.1987).

The district court did not reach these questions because it dismissed the limitation claim based on its finding that jet skis are not covered by the Limitation Act. Therefore, the court did not develop the factual record required for determination of whose negligence caused the injury and whether the jet ski owners had "privity or knowledge." Without the requisite factual basis, we cannot determine whether the appellants lacked "privity or knowledge." *See Whitaker v. Beavin,* 808 F.2d at 765 (summary disposition on a motion to dismiss inappropriate because factual development of causation lacking). We therefore decline to affirm the district court's dismissal of the liability claim on this alternative theory.

### E. The Injunction

The procedural rules for limiting liability are set forth in Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims. Fed.R.Civ.P.Supp. F. Section (3) of Rule F provides for injunctive relief as follows:

(3) Claims Against Owner; Injunction. Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

The district court dissolved the injunction against other proceedings because it found that jet skis were not entitled to limitation under the statute. Pursuant to our holding that jet skis are entitled to limitation of liability, the district court shall renew the injunction on remand in accordance with Supplemental Rule F.

## VI. CONCLUSION

Because we hold that a jet ski is covered under the Limitation Act, we reverse and remand for reinstatement of the injunction and for further proceedings consistent with this opinion.

REVERSED and REMANDED.