592 So.2d 1151 (1992)
Margaret LIPWORTH, As Personal Representative of the Estate of Lori Lipworth, a Deceased Minor, On Behalf of the Estate and the Survivors of the Decedent, to Wit: Margaret Lipworth, Natural Mother, and Stephen F. Lipworth, Natural Father, Appellants,
v.
KAWASAKI MOTORS CORP. U.S.A., a Foreign Corporation, Palm Beach Kawasaki, Inc., a Florida Corporation, and Kawasaki Heavy Industries, Ltd. a Foreign Corporation, Appellees.
No. 90-3473.
District Court of Appeal of Florida, Fourth District.
January 8, 1992.
Motion to Certify Question Denied Rehearing Denied February 20, 1992.
*1152 Edward A. Perse, Perse, P.A. & Ginsberg, P.A., and Ratiner & Glinn, P.A., Miami, for appellants.
Richard A. Mueller, Coburn, Croft & Putzell, St. Louis, Mo., and Ronald E. D'Anna, Mattlin & McClosky, Boca Raton, for appellee Kawasaki Heavy Industries, Ltd.
James E. Tribble and Angela C. Flowers, Blackwell & Walker, P.A., Miami, for appellees Kawasaki Motors Corp., U.S.A., and Palm Beach Kawasaki, Inc.
Motion to Certify Question Denied Rehearing En Banc Denied February 20, 1992.
PER CURIAM.
The surviving parents of their deceased eleven year old daughter, Lori, and the surviving mother, as personal representative of her late daughter's estate, appeal a final judgment rendered by the trial court against them and in favor of the defendants. We affirm.
Appellants filed a products liability suit against Palm Beach Kawasaki, Inc. for strict liability and against Kawasaki Motors Corporation and Kawasaki Heavy Industries, Ltd. for negligence and strict liability in the design, manufacture and sale of its JS 550A1 Jet Ski. On September 2, 1984, Lori collided with a dock while operating the jet ski in the intercoastal waterway and died on impact. The third amended complaint sought damages in excess of one million dollars for medical and funeral expenses for Lori, for lost support and services for her parents, and for pain and suffering for her parents.
After discovery, appellees filed two motions for partial summary judgment on the issue of damages, stating that federal maritime law controlled the case and under such law appellants were entitled to only medical and funeral expenses actually expended by them as a result of Lori's death.
The trial court entered summary judgment, holding the case governed by federal maritime law and damages limited to medical and funeral expenses actually expended. Appellants moved the trial court to amend their third amended complaint to seek damages only for loss of society, which the trial court granted. The amendment was the result of appellants' not wishing to proceed to trial to determine liability because they would recover no damages for funeral expenses, such claim being subject to a set off received in settlement from another defendant. The amendment of the ad damnum clause of the complaint enabled the trial court to enter an appealable final judgment which it did, resulting in the present appeal.

I.
Appellants first attempt to take the instant case out of federal maritime jurisdiction on several grounds, none of which we find to be meritorious, notwithstanding the tragedy and its judicial consequences. *1153 The statutory basis for federal admiralty jurisdiction is 28 U.S.C.A. § 1333 which provides in relevant part:
The district courts shall have original jurisdiction, exclusive of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in cases all other remedies to which they are otherwise entitled.
The courts have attempted to determine what admiralty or maritime jurisdiction means. The traditional or original test for the conferral of admiralty jurisdiction in a tort case was the locality of the wrong. A wrong was actionable in admiralty if it occurred on navigable waters. The Supreme Court has refined the test and added more prongs. In Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court held that admiralty jurisdiction did not extend to an airplane crash into navigable waters where the plane flew predominantly over land. Thus, the Court concluded that location on or over navigable waters was not of itself sufficient to turn an airplane negligence case into a maritime tort. The Court found it far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity. Nexus and locality were necessary for admiralty jurisdiction to lie.
In Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court held the collision of two pleasure boats cognizable in admiralty because it implicated the traditional maritime concern of navigation and could possibly disrupt maritime activity. Hence, a maritime activity need not bear a substantial relationship to a commercial activity so long as it had a potential impact on maritime commerce.
In Sisson v. Ruby, ___ U.S. ___, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court reviewed its holdings in Executive Jet and Foremost and found admiralty jurisdiction in an action involving a fire on a noncommercial vessel at a marina on a navigable waterway. The yacht owner sought to limit his liability for the fire which caused extensive damage to the marina and several neighboring boats. The Supreme Court reasoned that the jurisdictional inquiry did not turn on the actual effects on maritime commerce of the fire on the pleasure vessel but on the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity. Storage and maintenance of a vessel was considered a traditional maritime activity and the fire had a significant relationship to traditional maritime activity.
The Court declined to refine any further the test developed in Executive Jet and Foremost, finding the trilogy it had decided provided appropriate and sufficient guidance to the federal courts. Therefore, the relevant inquiry in the instant case involves three prongs: (1) locality, which is not an issue here as the collision occurred in the intercoastal waterway, navigable waters; (2) nexus, that the wrong bear a significant relationship to traditional maritime activity; and (3) potential impact of the type of incident on commercial maritime activity.
The issue of whether a jet ski is a vessel is a necessary preliminary step in an analysis of the facts of the instant case under the second prong. The Eleventh Circuit answered this question affirmatively in Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225 (11th Cir.1990). The Eleventh Circuit noted the definition of "vessel" as "every description of watercraft or artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3. It found no reasonable distinction between small motor boats capable of being used as a means of transportation on water and a jet ski, which is also capable of substantially equivalent transportation on water. Kays, 893 F.2d at 1230. Thus, the instant case involves a vessel.
Once it is determined that a jet ski is a vessel, it seems inevitable to us that the wrong involved in the instant case, the collision of a vessel with a dock, is related to traditional maritime activity. Operating a vessel is a traditional maritime activity. Appellants would like this court to find no *1154 relationship between the incident in the instant case and traditional maritime activity, stating that they did not allege negligent navigation as the cause of the injury. However, Foremost, to which appellants cite, does not require such an allegation, but merely held that where navigation of pleasure boats was involved and an accident with the potential to disrupt maritime commerce occurred in navigable waters, admiralty jurisdiction was appropriate. The relevant activity is navigation of vessels generally and hence the nexus prong is met.
Turning from nexus to potential impact upon commercial maritime activity, it is important to remember that it is not the actual effects of the incident that must be assessed, but the general features of the type of incident involved, to determine whether such activity is likely to disrupt commercial activity. In Foremost, the court found the collision of two small pleasure boats was potentially disruptive even though the collision there occurred in an area seldom, if ever, used for commercial traffic. Thus, the potential for disruption of commercial maritime activity exists under the facts of the instant case, even if the area where Lori crashed into the dock is seldom used by commercial boats. The third prong is met.
The trial court in the instant case applied maritime law to the exclusion of Florida's wrongful death statute. Because the instant case is an admiralty case, as discussed above, federal maritime law governs. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 378 n. 1, 90 S.Ct. 1772, 1776 n. 1, 26 L.Ed.2d 339, 344 n. 1 (1970); Ritchey v. Florida Power & Light, 468 So.2d 306, 307 (Fla.2d DCA 1985).
We have considered appellants' other arguments and reject them without discussion.

II
For their second point on appeal, appellants contend that, assuming arguendo that maritime law applies to the instant case, they have a damages claim for loss of society and the trial court erred in granting summary judgment for appellees on this count based on their lack of financial dependence on the decedent. The most recent Florida decision on point holds that parents may not recover under general maritime law for the death of a child absent a showing of financial dependence on the child. Perlman v. Valdes, 575 So.2d 216 (Fla.3d DCA 1990). We agree.
In Perlman a woman died when the speed boat in which she and her husband were riding struck an unlighted, unused concrete pier. Her parents joined in the husband's and estate's wrongful death action against the owner of the pier. The third district found that the trial court had properly granted summary judgment in the owner's favor on the parents' claim as the parents could not recover under general maritime law absent a showing of financial dependence. Id. at 218. The court cited Miles v. Apex Marine Corp., ___ U.S. ___, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (nondependent parent could not recover for loss of society of dead seaman under general maritime law wrongful death action). The third district denied parents of a nonseaman recovery denied parents of a seaman.
In Texaco Refining & Marketing, Inc. v. Estate of Dau Van Tran, 808 S.W.2d 61 (Tex.), cert. denied, ___ U.S. ___, 112 S.Ct. 301, 116 L.Ed.2d 245 (1991), a good samaritan stopped to help the elderly captain of a shrimp boat free his propeller. He was crushed against the dock when a wave washed ashore. Citing Miles, 111 S.Ct. at 326, the Texas Supreme Court held that loss of society is not recoverable under general maritime law. Thus, as did the Florida Third District Court of Appeal, Texas applied the Miles holding to nonseamen.[1]
*1155 In Sistrunk v. Circle Bar Drilling Co., 770 F.2d 455 (5th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986), the Fifth Circuit reversed the district court's judgment awarding nondependent parents of crew members of a drilling vessel damages under general maritime law for loss of society. It reasoned that denying recovery lent more uniformity to admiralty jurisdiction than allowing recovery.
In addition to citing uniformity as compelling denial of recovery, the court in Truehart v. Blandon, 672 F. Supp. 929 (E.D.La. 1987), refused to find the distinction between cases involving seamen and seaworthiness claims and those that did not relevant in order to craft for nonseamen's survivors a remedy not available to seamen's survivors, to whom admiralty provides a special solicitude. It stated that denying recovery followed the decided wisdom that only dependents should be permitted to recover for loss of society, finding dependency created a finite, determinable class of beneficiaries and the line drawn between dependents and nondependents appeared to be the most rational, efficient and fair way of determining those who may recover for loss of society and those who may not.
In Anderson v. Whittaker Corp., 894 F.2d 804 (6th Cir.1990), boaters drowned when their boat capsized and their surviving families and representatives brought a products liability action against the boat manufacturer in which they alleged that the air scoops located on both sides of the hull at the stern were negligently designed. The manufacturer conceded that the boat was defective and the district court found the plaintiffs had met their burden of proving proximate causation. The trial court found that the nondependent parents could not recover damages for loss of society, relying on the "twin aims" of maritime law as expressed in Sistrunk  those of achieving uniformity in the exercise of admiralty jurisdiction and of providing special solicitude to seamen. Id. at 811. The Sixth Circuit agreed and affirmed.
Because we agree with the rationale discussed in Anderson and Truehart and with the decision of Florida's Third District Court of Appeal in applying the Miles holding to nonseamen in Perlman, we affirm this point on appeal and find that the trial court did not err in holding nondependent parents can not recover under general maritime law for loss of society.
GLICKSTEIN, C.J., and STONE and FARMER, JJ., concur.
NOTES
[1] The problem with denying recovery for loss of society to parents in analogous situations to appellants in the instant case was noted in Palmer v. Ribax, Inc., 407 F. Supp. 974 (M.D.Fla. 1976). The court noted that if parents were denied standing as beneficiaries of the maritime claim, at least for purposes of recovering for loss of society, an irony would exist. Id. at 979. On the one hand, the parents' claim under state law is effectively destroyed and on the other hand, the parents are accorded no comparable maritime remedy. Thus, the nondependent parents in Palmer were entitled to bring a wrongful death action to recover for loss of society actually caused by the death of their eighteen year old child who fell off the deck rail of a party boat and drowned in a navigable lake in Central Florida.

Palmer seems an anomaly in the line of Moragne type cases because the movement has been toward uniformity of nonrecovery. See Miles, 111 S.Ct. at 326 (restoring uniform rule applicable to all actions for the wrongful death of a seaman, whether under Death on the High Seas Act, the Jones Act, or general maritime law by eliminating loss of society damages). Other courts have found Palmer to be a misinterpretation of Sea-Lan Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (allowing widow's claim for loss of society of longshoreman killed on state territorial waters superseded by statute as recognized in Miles). In Truehart v. Blandon, 672 F. Supp. 929 (E.D.La. 1987), the court denied recovery for loss of society under general admiralty law for death of a twenty-four year old son who was not living with his parents nor contributing to their financial support. It reasoned that Palmer had misread dictum in Law v. Sea Drilling Corp., 523 F.2d 793 (5th Cir.1975), that wrongful death recovery compensates a decedent's dependents and other survivors. However, the Fifth Circuit went on to add that the loss of society belongs to the dependents not to the decedent. Id. at 795.
The Truehart court stated that Palmer had erroneously implied that nonpecuniary damages were the only damages available in a maritime wrongful death action, because even if not entitled to loss of society damages, nondependent survivors could still maintain a wrongful death action for pecuniary damages, such as funeral expenses. Truehart, 672 F. Supp. at 933.