**In the Matter of the Complaint of W.D. NOBLES, III and Sally Nobles, for limitation of liability as owner of the MO-TORBOAT FL 1258 FV, and of Cincinnati Insurance Company as insurer of the liability of the owner of said vessel for limitation of liability as such insurer.**

**No. PCA 92–30088–MMP.**

United States District Court,
N.D. Florida,
Pensacola Division.

Aug. 9, 1993.

lient facts and procedural history, this Court will address each motion in turn.

### FACTS

On July 28, 1991, Billy Nobles was operating a pleasure boat[1] owned by his parents, Sally[2] and W.D. Nobles III. While three persons in addition to Billy Nobles were occupants in the vessel and one other was being towed as a skier, the vessel struck a boat house. Casey Crongeyer, one of the occupants of the boat, died as a result of this accident; the other occupants were injured. The person being towed as a skier apparently[3] escaped serious injury. The boat house which the boat struck and a private craft being housed therein were both damaged.

### PROCEDURAL HISTORY

On February 24, 1992, Sally and W.D. Nobles III, along with the Cincinnati Insurance Company, filed with this Court a complaint for limitation of liability pursuant to 46 U.S.C.App. § 183, *et seq.* (Act). This Court accordingly ordered that a notice to claimants be published. *See* doc. 16 and attachments thereto. Mary Ann and Robert L. Crongeyer filed a claim with this Court January 25, 1993, on their own behalf and as natural parents and personal representatives of the estate of Casey Crongeyer. No other parties have filed claims, and the time for so doing has expired.

James B. Thompson, pro hac vice, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, St. Petersburg, FL.

J.B. Murphy, Murphy, Parks & Oberhausen, Pensacola, FL, for claimants Crongeyer.

### ORDER

PAUL, Chief Judge.

This cause is before the Court on numerous motions. After a brief recitation of sa-

### DISCUSSION

*(1) Motion to Drop a Party (doc. 19)*

█ As noted above, Sally and W.D. Nobles III, along with the Cincinnati Insurance Company (CIC), have filed with this Court a complaint for limitation of liability. Claimants assert by way of this motion that CIC lacks standing to be party to this action, and, accordingly, must be dropped from the complaint. Plaintiffs contest this assertion, and have filed a response in opposition. *See* doc. 21. In that response, plaintiffs seek to main-

---

1. The vessel was a sixteen foot motorboat powered by a 120 horsepower engine.

2. As discussed below, Mrs. Nobles' ownership of the boat is still at issue. *See infra* section 5.

3. The pleadings filed thus far are absent any reference to the effect of this collision on the person being towed as a skier.

tain CIC as a party to this litigation, and to strike the affirmative defense which seeks to exempt CIC from any limitation of liability in this action. *Id.*

Though sometimes a beneficiary of an action for limitation of liability, "liability underwriters are not entitled to 'limitation of liability' as that phrase is used as a term of art in admiralty." *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 421, 74 S.Ct. 608, 615, 98 L.Ed.806 (1954); *see also Magnolia Marine Transp. Co. v. Laplace Towing Corp.,* 964 F.2d 1571, 1576 (5th Cir.1992) ("[T]he Act itself affords the underwriters no right of limitation." (citations omitted)). "A maritime insurer's right to limit its liability depends upon the terms of its contract of insurance." *Magnolia Marine Transp. Co.,* 964 F.2d at 1576.

Claimants' motion to drop a party, doc. 19, is GRANTED. Plaintiffs' motion to strike affirmative defense, doc. 21, is DENIED.

*(2) Motion to Strike Portions of Claim (doc. 23)*

■ Plaintiffs seek to strike the following paragraphs from the claim in this instance:

*Paragraph 12:* "As a proximate result of plaintiffs' negligence, claimant, Mary Ann Crongeyer, has lost the support and services of her son." Doc. 17 at 3.[4]

*Paragraph 14:* "As a proximate result of plaintiffs' negligence claimant, Mary Ann Crongeyer, mother of the decedent, has suffered mental pain and suffering and will suffer such mental pain and suffering in the future for the loss of her son, Casey L. Crongeyer." *Id.*

*Paragraph 15:* "As a proximate result of plaintiffs' negligence claimant, Robert L. Crongeyer, father of the decedent, has suffered mental pain and suffering and will suffer such mental pain and suffering in the future for the loss of his son, Casey L. Crongeyer." *Id.*

*Paragraph 16:* "As a proximate result of the plaintiffs' negligence claimants have lost the estate of Casey L. Crongeyer accumulated reasonably from his continued life." *Id.* at 3–4.

Doc. 22 at 5.

Plaintiffs argue that general maritime law governs this cause, and renders all of the above-listed damage claims unrecoverable. Claimants assert that Florida's wrongful death statute and general maritime law allow recovery of the above-listed damages.

Claimants bring this cause in their individual capacities based on the alleged wrongful death of their son, and in their capacities as his estate's personal representative for claims sounding in survivorship. *See Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 575 n. 2, 94 S.Ct. 806, 810 n. 2, 39 L.Ed.2d 9 (1974) (explaining the difference between claims sounding in wrongful death and those sounding in survivorship). In *Moragne v. States Marine Lines, Incorporated,* the Supreme Court held that general maritime law covers causes of action for wrongful death if that death is caused by an alleged violation of maritime duties. 398 U.S. 375, 408, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970). This ruling has been expanded, and claims of survivorship are now also treated under the general maritime law. *Roberson v. N.V. Stoomvaart Maatschappij,* 507 F.2d 994, 995 (5th Cir.1975).[5] General maritime law, then, governs all claims brought in this case.[6]

---

**4.** Paragraph eleven of the claim mirrors paragraph twelve, except that the claim for loss is made on behalf of Robert Crongeyer. *See* doc. 17 at 3. In their memorandum in support of the motion to strike, plaintiffs do not mention paragraph eleven of the claim. *See* doc. 22 at 5. In their response to the claim, however, plaintiffs move to strike a portion of paragraph eleven. Doc. 23 at 2. Because of the parallel between paragraphs eleven and twelve, this Court will include discussion of the former when disposing of the motion to strike the latter.

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the court

adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

**6.** Because a persuasive rationale for the enforcement of state wrongful death statutes in admiralty courts no longer exists after *Moragne,* we hold that the wrongful death remedy provided by that case precludes recognition in admiralty of state statutes. The general maritime law will therefore govern the case before us. *In re S/S Helena,* 529 F.2d 744, 753 (5th Cir. 1976).

■ "[U]nder the maritime wrongful-death remedy, the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses." *Gaudet,* 414 U.S. at 584, 94 S.Ct. at 814. Parents, however, may not recover for the support and services of a child absent a showing of actual financial dependence on that child. *See Lipworth v. Kawasaki Motors Corp.,* 592 So.2d 1151, 1152 (Fla. 4th DCA), *cert. denied,* —— U.S. ——, 113 S.Ct. 465, 121 L.Ed.2d 373 (1992).

■ Claimants admit that they may not be able to show actual financial dependence on their deceased son, and may not be able to claim damages for lost support and services. Doc. 27 at 1–2. It is too early in this case to conclude that claimants can not show this dependence as a matter of fact.[7] The issue of actual financial dependence and the underlying claim will be better addressed in the context of a motion for summary judgment. The motion to strike the damage claims for loss of society,[8] support, services, and funeral expenses—that is, paragraphs eleven and twelve—must be DENIED.[9]

■ "[Damages for m]ental anguish and grief ... [are] not compensable under the maritime wrongful-death remedy." *Gaudet,* 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17. The motion to strike paragraphs fourteen

and fifteen inasmuch as those paragraphs claim damages for mental anguish and grief must be GRANTED.[10]

■ The final portion of the motion to strike addresses paragraph sixteen, which prays for recovery based on net accumulations of the decedents' expected estate. Plaintiffs posit no argument, in addition to that discussed above in support of their motion to strike this portion of the claim. Given the lack of a compelling argument in favor of this portion of the motion to strike, and the language in several opinions tending to favor such a recovery,[11] the motion to strike paragraph sixteen is DENIED.[12]

Claimants recently filed a supplemental notice of authority in opposition to plaintiffs motion to strike, doc. 48, to which plaintiff filed a response, doc. 50. The matters raised in those pleadings do not alter this Court's findings, and will not be discussed separately.

### (3) Motion to Dismiss (doc. 28)

Plaintiffs assert that this Court is properly vested with jurisdiction to hear this cause pursuant to 28 U.S.C. § 1333(1), and further contend they are entitled to limit their liability pursuant to the Act. Claimants have moved to dismiss this complaint on two grounds: first, they argue that this Court

---

**7.** In the context of a motion to dismiss, this Court must take all allegations in plaintiff's complaint as true. *Beck v. Interstate Brands, Corp.,* 953 F.2d 1275, 1276 (11th Cir.1992) (per curiam).

**8.** In *Cantore v. Blue Lagoon Water Sports, Incorporated,* the court held that damages for loss of society are not recoverable under general maritime law absent a showing of financial dependence on the deceased. 799 F.Supp. 1151, 1155 (S.D.Fla.1992). This Court finds that reasoning that ties recovery for loss of society to financial dependence strained, and, therefore, will not adhere to the conclusion reached in *Cantore.*

**9.** Any reliance on *Miles v. Apex Marine Corporation,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), as to the motion to strike the claim for loss of society is misplaced. The limitations on loss of society damages expounded in *Miles* spring from statutes inapplicable in this instance: "There is no recovery for loss of society in a *Jones Act* wrongful death action." 498 U.S. at 32, 111 S.Ct. at 325 (emphasis added). This case

is not brought under the Jones Act. Because it mistakenly relied on *Miles* when affirming the dismissal of certain damage claims, *Perlman v. Valdes,* 575 So.2d 216 (Fla. 3d DCA 1990), is similarly inapplicable.

**10.** Because the distinction between a recovery for loss of society and one for mental anguish and grief is not easily defined, this Court is hesitant at this point to strike paragraphs fourteen and fifteen without qualification. *See Gaudet,* 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17; *see also In re S/S Helena,* 529 F.2d at 753.

**11.** *See Gaudet,* 414 U.S. at 588, 94 S.Ct. at 817; *Moragne,* 398 U.S. at 383, 90 S.Ct. at 1779; *In re M/V Elaine Jones,* 480 F.2d 11, 30 (5th Cir.1973), *cert. denied,* 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975).

**12.** In *Cantore,* the court held that future economic loss is not recoverable under general maritime law. 799 F.Supp. at 1155. Because the court relied on the authority of *Miles* in so holding, this Court will not follow this lead. *See supra* note 9.

does not have jurisdiction over this cause pursuant to 28 U.S.C. § 1333(1); second, they argue that admiralty jurisdiction under the Act does not exist in this case due to the nature of the boat. *See* doc. 28. This Court will address these arguments in inverse order.

#### (a) Recreational boating and the Act

■ One of the avenues available to a putative tortfeasor in an admiralty cause is a complaint under the Act.

> The liability of the owner of any vessel, whether American of foreign, . . . for any loss, damage, or injury by collision, . . . done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C.App. § 183(a). The limitations imposed by the Act are impressive.

> If a boat owner is allowed protection under the Act, he can obtain an order from the federal district court enjoining all litigation against him as a result of the accident or collision, and he can limit his liability for injuries and damage caused by the accident to the value of his vessel.

*In re Lowing*, 635 F.Supp. 520, 521 (W.D.Mich.1986).[13]

Limitation under the Act can result in a boat owner being subjected to far less liability than under unadulterated circumstances. Behind the Act, then, must be some compelling justification.

> "The purpose of the act of Congress was to encourage investment by exempting the investor from loss in excess of the fund he is willing to risk in the enterprise." *Flink v. Paladini*, 279 U.S. 59, 62, 49 S.Ct. 255, 255, 73 L.Ed. 613 (1929) (internal quotation marks and citations omitted).

> The legislative history of the Limitation of Liability Act leaves no doubt the congressional purpose behind the law was encouraging investment in the American merchant marine industry. Recognizing a vast majority of other countries heavily engaged in maritime commerce maintained laws limiting or exonerating shop owners from tort liability, Congress enacted the Limitation of Liability Act to place American shipping investors on equal footing with their foreign counterparts.

*In re Sisson*, 668 F.Supp. 1196, 1198 (N.D.Ill. 1987) (citations omitted).

■ In fashioning this competitive-minded statute, Congress "declined to extend [limitation] protection to many categories of industry actors." *Magnolia Marine Transport Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1579 (5th Cir.1992) (citations omitted). Allowing the owners of pleasure craft to limit their liability pursuant to the Act defies the express purpose of that statute, and provides an unintended and unjust windfall for the owner of a pleasure craft.

The Eleventh Circuit has recognized these tensions, the inconsistent results obtained thereunder, and has expressed a disdain for the application of the Act in instances such as this one. *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225 (11th Cir.1990). The law as written by Congress is unambiguous, however, and must be enforced in this manner. Because of this clear Congressional mandate, the Court in *Kays* held that the Act covers pleasure craft, *id.* at 1229, and that a pleasure craft, in that case a jet ski, is a "vessel" for purposes of the Act, *id.* at 1230. The portions of this motion to dismiss based on the nature of the craft, though duly noted by this Court, must be DENIED on the authority of *Kays*.

#### (b) Jurisdiction and 28 U.S.C. § 1333(1)

■ Pursuant to 28 U.S.C. § 1333(1), the underlying basis for jurisdiction in this cause,[14] this Court has original jurisdiction

---

13. According to a properly executed and filed affidavit by plaintiff W.D. Nobles III, the salvage value of his boat is zero dollars. *See* attachment to doc. 44 at 2.

14. The question of whether the Act itself provides an independent basis of jurisdiction was not raised in this complaint, and remains unanswered in our jurisprudence. *Sisson v. Ruby,*

over "[a]ny civil case of admiralty or maritime jurisdiction...." Claimants argue that this Court is not properly vested with jurisdiction under this section, and urge that this case be dismissed because of this deficiency.

 In cases such as this one, admiralty jurisdiction is appropriate only "when [a] ... potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity...." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n. 5, 102 S.Ct. 2654, 2658 n. 5, 73 L.Ed.2d 300 (1982). This Court must determine, then, whether the accident in this instance poses a potential hazard to maritime activity, and whether the operation of the pleasure craft bears a substantial relationship to traditional maritime activity. Affirmative answers to both inquiries are required for admiralty jurisdiction to lie.

Claimants argue that the accident in this instance does not satisfy the first criteria because the accident did not result in any actual interference with commercial activities, and did not raise a significant likelihood of such interference. Doc. 28 at 2.

> This argument misunderstands the nature of our inquiry. We determine the potential impact of a given type of incident by examining its general characteristics. The jurisdictional inquiry does not turn on the *actual* effects on maritime commerce ...; nor does it turn on the particular facts of the incident in this case.... Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.

*Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990) (emphasis in original).

In *Sisson*, the Court held that "the general features—a fire on a vessel docked at a marina on navigable waters—plainly satisfy the requirement of potential disruption to commercial maritime activity." *Id.* The general features of the incident in this case— a boat striking a boat house—are similarly of

497 U.S. 358, 359 n. 1, 110 S.Ct. 2892, 2894 n. 1, 111 L.Ed.2d 292 (1990).

the type that indicate a potential for disruption of maritime commerce.

This conclusion rings especially true in light of the Court's holding in *Foremost Insurance Company v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). At issue in *Foremost* was a collision between two purely pleasure boats on a stretch of river "seldom, if ever, used for commercial traffic." *Id.*, 457 U.S. at 670 n. 2, 102 S.Ct. at 2656 n. 2. The Court found that this collision had the potential for disruption of maritime commerce not because of the specific facts of the incident, but rather because of the potential impact of such an accident and the need for uniform rules of navigation. *Id.*, 457 U.S. at 673, 102 S.Ct. at 2658. The Court analogized this collision to one occurring at the mouth of the Saint Lawrence Seaway, and noted that no one could contest the effect such a collision would have on maritime commerce. *Id.*

The incident in this instance lends itself to such an analysis. The collision of a vessel with an object affixed to land no doubt would effect maritime commerce if that object was a bridge, or a loading dock in the port of New York. Because of this potential, the incident in this instance effects maritime commerce.

As to the second requirement, it is beyond question that the operation of a boat on navigable waters bears a substantial relationship to traditional maritime activities.

> Because the "wrong" here involves the negligent operation of a vessel on navigable [15] waters, ... it has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court.

*Foremost*, 457 U.S. at 674, 102 S.Ct. at 2658; *see also Lipworth v. Kawasaki Motors Corp.*, 592 So.2d 1151, 1153 (Fla. 4th DCA 1992) ("[T]he collision of a vessel with a dock is related to traditional maritime activity.").

Based on this authority, the motion to dismiss for lack of jurisdiction under 28 U.S.C. § 1333(1) must be DENIED.

15. For purposes of this motion, claimants are conceding that Bayou Texar is a navigable waterway. Doc. 28 at 1.

Claimants recently filed a supplemental notice of authority in support of their motion to dismiss, doc. 48, to which plaintiff filed a response, doc. 50. The matters raised in those pleadings do not alter this Court's findings, and will not be discussed separately.

*(4) Motion to Deposit Funds (doc. 34)*

 On March 15, 1993, plaintiffs deposited with this Court the sum of $5,000.00. Clerk's Office Receipt Number 062230. On March 25, 1993, plaintiffs moved this Court for an order directing the Clerk of Court to deposit this amount in an interest-bearing account in satisfaction of the mandates of Supplemental Rule F(1)(a), Federal Rules of Civil Procedure. Doc. 34. On March 26, 1993, Judge William Stafford granted this motion. Doc. 36. On March 31, 1993, claimants filed a response in opposition to the motion to deposit funds. Doc. 37.

Claimants raise two grounds in opposition to the motion to deposit funds. First, they argue that the boat owner has not filed a sworn affidavit as to the value of the vessel, and should not be allowed to deposit some amount based on an unsworn document. *Id.* at 1-2. The boat owner's original affidavit has since been filed. *See* attachment to doc. 44. This objection is now moot.

Claimants also argue that the amount tendered should not be accepted as it is not sufficient to cover their alleged injuries. Supplemental Rule F(1)(a), Federal Rules of Civil Procedure, provides that in an action for limitation of liability

> [t]he owner shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended.

Claimants do not claim that the value of the boat is other than $5,000.00. This objection by claimants, then, is truly a statement that this Court should find the $5,000.00 insuffi-cient to carry out the provisions of the admiralty statutes as amended.

Claimants have come forward with no authority in support of this proposition, and this Court can conceive of none. Accordingly, as set forth in Judge Stafford's order of March 26, 1993, the motion to deposit funds is GRANTED.

*(5) Motion to for Leave to File Amended Answer and Claim (doc. 38)—Second Motion to Drop a Party (doc. 40)*

 In deposing W.D. Nobles III, claimants learned that he was the sole title owner of the boat involved in the accident underlying this cause on the date of the accident. *See* doc. 38 at 1; doc. 40 at 1. Because the Act applies only to "owners"[16] of vessels, claimants pray that this Court drop Sally Nobles as a party entitled to limitation.

 Title ownership is not dispositive of the issue of who is an "owner" for purposes of the Act. "The word 'owner' in the Limitation Act is accorded a liberal, common sense interpretation in order to effectuate the intent of the act." *Hammersley v. Branigar Org. Inc.*, 762 F.Supp. 950, 956 (S.D.Ga.1991) (citations omitted). Factors such as who pays for storage of the vessel and who skippers the vessel, *id.*, as well who has possession and control of the vessel, *In re Shell Oil Company*, 780 F.Supp. 1086, 1092 (E.D.La. 1991), must be taken into account in determining who is an owner for purposes of the Act.

At this point, then, claimants second motion to drop a party must be DENIED. More issues than title ownership must be factored into the ownership equation. This matter will more effectively be addressed with the aid of more discovery.

The motion for leave to file an amended complaint and answer is GRANTED. The only changes in these documents as proposed address Sally Nobles' ownership of the vessel. Doc. 38 exhibit A at 3. As discussed immediately above, at this point in this cause,

---

**16.** The Act, by its express terms, serves to limit "[t]he liability of the owner of any vessel...."

46 U.S.C.App. § 183(a).

claimants are entitled to assert Mrs. Nobles' alleged lack of ownership as a defense to the limitation action.

*(7) Motion for a Protective Order (doc. 45)*

 Since the date of the accident underlying this cause, Sally Nobles, the mother of the driver of the boat, has been under the care of psychologist Dr. Ronald C. Yarbrough. Doc. 45. In the opinion of Dr. Yarbrough, Mrs. Nobles should never be deposed or testify in this matter, lest she suffer long-term major emotional trauma. Doc. 45 exhibit A. On this ground, plaintiffs request that this Court enter a protective order prohibiting claimants from taking Mrs. Nobles' deposition. Doc. 45 at 3.

"It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979) (citations omitted). Plaintiffs have not shown such extraordinary circumstances, and this Court will not enter a blanket prohibition on the taking of Mrs. Nobles' deposition.

> However, the Court has no reason to disbelieve the psychiatrist's conclusion, and, therefore, it must consider that plaintiff's health could be jeopardized by the deposition. Consequently, the Court finds that plaintiff has met her initial burden to receive a brief stay but more is required should she want a substantial or permanent stay of her deposition.

*Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C.1987).

Mrs. Nobles' knowledge as to certain key issues is put at issue by the very nature of this cause. Her ownership of the vessel, her care in providing a seaworthy vessel, and the amount of care she used in entrusting the boat to her son are all issues that must be answered, and, more than likely, must be answered by Mrs. Nobles. For the time being, however, she will not be subjected to a deposition.

Plaintiffs' motion for a protective order is GRANTED to the following extent:

(a) Sally Nobles shall not be noticed or summoned to appear for a deposition until further order of this Court;

(b) Not later than August 27, 1993, plaintiffs shall make Dr. Yarbrough available for deposition;

(c) Not later than September 7, 1993, Sally Nobles shall file a renewed motion for a protective order, should she still seek such protection; and

(d) If a renewed motion is filed, claimants shall respond not later than September 13, 1993.

### CONCLUSION

With the foregoing as authority, this Court ORDERS as follows:

(1) Claimants' motion to drop a party, doc. 19, is GRANTED. CIC is hereby DISMISSED from this cause.

(2) Plaintiffs' motion to strike affirmative defense, doc. 21, is DENIED.

(3) Plaintiffs' motion to strike portions of claim, doc. 23, is GRANTED IN PART and DENIED IN PART, as set forth in detail above.

(4) Claimants' motion to dismiss, doc. 28, is DENIED.

(5) Plaintiffs' motion to deposit funds, doc. 34, is GRANTED. The Clerk of Court shall deposit the $5,000.00 referenced in Clerk's Office Receipt Number 062230 in an interest-bearing account for the duration of this litigation.

(6) Claimants' motion for leave to file amended answer and claim, doc. 38, is GRANTED. Claimants shall file their amended claim and answer not later than August 9, 1993.

(7) Claimants' second motion to drop a party, doc. 40, is DENIED.

(8) Plaintiffs' motion for a protective order, doc. 45, is GRANTED, as set forth in detail above.

DONE AND ORDERED.